Thomas John SZARZYNSKI,
petitioner, Appellant,

v.

Therese Elizabeth SZARZYNSKI,
Respondent.

Nos. A06–882, A06–1417.

Court of Appeals of Minnesota.

May 22, 2007.

Christopher M. Banas, Hellmuth & Johnson, PLLC, Eden Prairie, MN, for appellant.

Suzanne E. Grandchamp, Wayzata, MN, for respondent.

Considered and decided by SHUMAKER, Presiding Judge; KLAPHAKE, Judge; and WILLIS, Judge.

## OPINION

SHUMAKER, Judge.

In these consolidated appeals in this post-dissolution dispute, appellant-father Thomas Szarzynski argues that the district court (a) should have implemented a particular parenting access schedule; (b) should have given him an evidentiary hearing on his motion to modify custody; (c) should not have removed a particular parenting consultant; (d) should not have ruled father to be a nuisance litigant; (e) improperly awarded respondent-mother Therese Szarzynski conduct-based attorney fees; (f) failed to give father and his former attorney adequate notice of a contempt hearing; and (g) should not have found father in contempt of court. Mother moves to dismiss as moot the portion of the consolidated appeals in which father challenges the district court's denial of his motion to modify custody. We deny mother's motion to dismiss, and affirm the district court on all issues, except its determination that father is a nuisance litigant. Because it is unclear whether the district court applied Minn. R. Gen. Pract. 9.01–.07 in making that determination, we reverse the determination that father is a nuisance litigant and remand for the district court to address, under Minn. R. Gen. Pract. 9.01–.07, whether father is a frivolous litigant.

## FACTS

When the parties' marriage deteriorated, mother obtained an April 2003 harassment restraining order against father. That order limited father's access to the children. The parties' April 2004 dissolution judgment awarded father the family business and awarded mother spousal maintenance, starting at $12,500 per month. The judgment included a parenting plan under then effective Minn.Stat. § 518.1705 (2004). Based partially on the April 2003 restraining order, that parenting plan (a) awarded mother sole legal and physical custody of the children; (b) awarded father supervised parenting time; (c) conditioned father's obtaining unsupervised parenting time on father satisfying certain prerequisites, including his completing anger management therapy, to the satisfaction of the children's therapist; and (d) directed the appointment of a parenting consultant.

The parties immediately started a series of ongoing disputes regarding maintenance, custody, and parenting time. In a November 2004 letter, a parenting consultant proposed an access schedule designed to "ramp up" father's access to the children. While the schedule in the letter was supposed to become effective November 15, 2004, and culminate in father having overnight visits with the children by July 2005, the letter contained no explicit determination of whether father had satisfied the preconditions for unsupervised visitation. Also, the parties' disputes resulted in, among other things, several motions by the parties to enforce obligations under the judgment as well as related contempt motions, each party having various attorneys representing them at different times (and father periodically proceeding pro se), and a number of parenting consultants being removed, resigning, or declining to work on the case.

In one motion, mother sought to have father held in contempt for not paying maintenance, but, on the day of the evidentiary hearing set for mother's motion, the parties stipulated to allow father an opportunity to come current on his arrearages. As a result, the district court issued a September 2005 order indefinitely continuing mother's contempt motion. Father, however, failed to come current on his maintenance arrearages.

While these disputes were occurring, mother's father, who had access to the children, was alleged to have sexually abused two of the children's cousins. And a letter from one of the cousins referred to mother's father abusing one of the parties' children. Based on these events, father filed a February 2006 "emergency motion" to, among other things, modify custody and enforce his parenting time, which he alleged mother had denied him. Mother opposed these motions and moved, among other things, to replace the parenting consultant, for attorney fees, and to have father ruled a "nuisance litigant." After a hearing at which no testimony was taken, the district court issued a March 8 order in which the district court denied father's motion to modify custody, replaced the parenting consultant, awarded mother conduct-based attorney fees, and ruled father to be a nuisance litigant. Also on March 8, mother moved to reinstate her contempt motion.

On March 22, the district court held a hearing on mother's reinstated contempt motion. The attorney then formally representing father could not attend the March 22 hearing and sent an attorney with whom he shared an office. That attorney learned when he got to the courthouse that the hearing set for that day was an evidentiary hearing on mother's contempt motion, rather than a non-evidentiary hearing on whether to reinstate mother's contempt motion. For this reason, that attorney sought a continuance. The district court denied the continuance and the first portion of an evidentiary hearing occurred. A second day of testimony was set for, and occurred on, April 14.

On May 10 father appealed the March 8 order (A06–882), and on May 15, the district court issued an order finding father in contempt for not paying maintenance, stating father's maintenance arrearages were $145,158.80, directed father's incarceration, set purge conditions, and set a review hearing. When, on July 11, father failed to appear for the review hearing, that hearing was reset for July 28. Less than a week later, mother's father died.

After the re-set July 28 review hearing, the district court's July 31 order found that father had failed to purge his contempt, that father had failed to show an adequate reason for doing so despite the ability to make the payments, and that incarceration was likely to produce compliance. The July 31 order then directed father's incarceration. Father appealed the July 31 order (A06–1417). On August 11, father obtained release from the workhouse by liquidating certain retirement accounts awarded to him in the dissolution judgment and using the proceeds to pay his maintenance arrears. This court consolidated father's appeals from the March 8 order and the July 31 order, and, citing the death of her father, mother moved to dismiss as moot the portion of appeal A06–882 in which father challenges the district court's denial of his motion to modify custody.[1]

## ISSUES

1. Did the district court erroneously fail to enforce the parenting-time schedule?

2. Should this court dismiss as moot the portion of appeal A06–882 in which father challenges the district court's deni-

---

1. After this case was briefed, argued, and submitted to this court, father retained attorney Christopher M. Banas to replace attorney Mark A. Olson, who had been retained by father in February 2005 to represent him regarding his access to the children, and who had formally noted his appearance in this proceeding in March 2005.

al, without an evidentiary hearing, of his motion to modify custody?

3. Should the district court have held an evidentiary hearing on father's motion to modify custody?

4. Did the district court abuse its discretion by removing the parenting consultant?

5. Did the district court abuse its discretion by ruling father to be a nuisance litigant?

6. Did the district court abuse its discretion by awarding mother attorney fees?

7. Did the district court abuse its discretion by denying father a continuance of the contempt hearing?

8. Did the district court clearly err in the contempt proceeding when it found father could pay the obligations imposed on him?

## ANALYSIS

### I

Father argues that the district court committed reversible error by not implementing the November 2004 parenting-time schedule. The dissolution judgment includes a parenting plan under then effective Minn.Stat. § 518.1705 (2004) and required the appointment of a parenting consultant. That parenting plan states, among other things, that non-child-support disputes will be submitted to the parenting consultant, that the parenting consultant shall make binding decisions regarding the access schedule and the children's activities as they impact the schedule, and that the district court has authority to financially penalize a party who frustrates the parenting plan's dispute-resolution process. Thus, while the parenting plan explicitly states that the parenting consultant has the authority to make binding custody and parenting-time decisions, it does not state that the district court has direct authority over parenting time.

In response to father's parenting-time motion, the March 8 order (a) notes that the dissolution judgment conditioned father's unsupervised parenting time on his meeting certain prerequisites; (b) states both that "[t]he initial determination [of] whether [father] has satisfied these terms and conditions is to be made by a parenting time expeditor [2]" and that the current "parenting-time expeditor" "has made no decision determining that [father] has achieved all of the terms and conditions of the parenting plan to transition to unsupervised parenting time[,]" and that, when asked when he would like to exercise supervised parenting-time, father responded "I don't know"; and (c) orders both that "[t]he parenting plan shall remain in full force and effect and both parties shall cooperate and make reasonable efforts in *immediately* implementing the same" and that father was to have supervised parenting time "every other Wednesday, from 2:00 p.m. until 4:00 p.m., *to be commenced immediately.*" (Emphasis added.)

Thus, the district court functionally granted father's motion to implement the judgment's parenting-time schedule, albeit with supervised parenting time and noting that no determination had been made by the *parenting consultant* about whether father satisfied the requirements for supervised parenting time. Further, if father wants unsupervised parenting time, he needs to obtain a determination *from the parenting consultant* that he has satisfied the requirements for unsupervised parent-

---

**2.** The reference to a "parenting-time expediter" appears to be a typographical error. *See*

Issue IV A.

ing time, or he needs to move the district court to modify the parenting plan to allow the district court to make that determination. *See* Minn.Stat. § 518.1705, subd, 9 (2006) (addressing modification of parenting plans). Here, he has done neither, and we affirm the district court on these questions.

## II

■ Father's motion to modify custody was partly based on his assertions that mother endangered the children by leaving them in her father's care. Noting that mother's father was terminally ill and in hospice care, the March 8 order denied father's motion. Mother's father died on July 16, and mother moves to dismiss as moot the portion of appeal A06–882 in which father challenges the denial of his motion to modify custody.

■ Generally, an appeal or an issue in an appeal will be dismissed as moot if, pending an appeal, an event occurs which makes a decision on the merits unnecessary or if an award of effective relief impossible. *In re Inspection of Minn. Auto Specialties, Inc.*, 346 N.W.2d 657, 658 (Minn.1984).[3] Mootness "implies a comparison between the relief demanded and the circumstances of the case at the time of decision in order to determine whether there is a live controversy that can be resolved." *In re Application of Minnegasco, Inc.*, 565 N.W.2d 706, 710 (Minn. 1997). The relief father seeks is an evidentiary hearing, which this court can grant despite the death of mother's father.

Also, father argues that the district court's denial of his motion to modify custody failed to consider that the mother's allowing the children to spend time with her father was only one example of her poor judgment. He further argues that mother interfered with his parenting time and that, under Minn.Stat. § 518.175, subd. 5 (2006), this interference entitles him to an evidentiary hearing. If such problems exist in the district court's ruling, they would not be resolved by the death of mother's father. Therefore, we conclude that the custody question is not moot, and we deny the motion to dismiss.

## III

■ Father's pro se motion to modify custody appears to be an endangerment-based motion. Under the relevant statute, custody and parenting plans may be modified if the existing custodial arrangement "endangers" the children. Minn.Stat. § 518.18(d)(iv) (2006). A moving party is to submit an affidavit reciting the facts supporting the party's motion to modify custody. Minn.Stat. § 518.185 (2006). A party seeking an endangerment-based modification of custody

> must establish four elements to make a prima facie case for modification: (1) circumstances have changed involving the child or custodial parent; (2) the modification would be in the best interests of the child; (3) the child's physical or emotional health or emotional development is endangered by his or her present environment; and (4) that harm

---

**3.** Despite an order directing the parties to address mootness in their briefs, father did not address mootness until his reply brief. Therefore, his mootness argument is not properly before this court. *See Balder v. Haley*, 399 N.W.2d 77, 80 (Minn.1987) (stating issues not briefed are waived); *McIntire v. State*, 458 N.W.2d 714, 717 n. 2 (Minn.App. 1990) (noting issues not raised or argued in

appellant's principal brief cannot be revived in a reply brief), *review denied* (Minn. Sept. 28, 1990); *see also* Minn. R. Civ.App. P. 128.02, subd. 3 (requiring reply brief to be "confined to new matter raised in the brief of the respondent"). We, however, exercise our discretion to address the mootness question. *See Nguyen v. State Farm Mut. Auto. Ins. Co.*, 558 N.W.2d 487, 491 (Minn.1997).

associated with the proposed change in custody would be outweighed by the benefits of the change.

*Frauenshuh v. Giese,* 599 N.W.2d 153, 157 (Minn.1999). In deciding whether a party makes a prima facie case to modify custody, "the court must accept the facts in the moving party's affidavits as true, and the allegations do not need independent substantiation." *Geibe v. Geibe,* 571 N.W.2d 774, 777 (Minn.App.1997). While the district court must take the moving party's allegations as true and disregard contrary allegations by others, the district court may consider allegations by others that are not contrary to the allegations of the moving party and which may put the moving party's allegations in an appropriate context. *Id.* at 777; 779.[4] Whether a party makes a prima facie case to modify custody is dispositive of whether an evidentiary hearing will occur on the motion. *See Morey v. Peppin,* 375 N.W.2d 19, 25 (Minn.1985) (stating "an evidentiary hearing shall be scheduled" if moving party makes a prima facie case to modify custody); *Nice–Petersen v. Nice–Petersen,* 310 N.W.2d 471, 472 (Minn.1981) (stating if moving party fails to make prima facie case, district court "[is] require[d] ... to deny [the] motion"). A district court, however, has discretion in deciding whether a moving party makes a prima facie case to modify custody. *See Geibe,* 571 N.W.2d at 780 (holding district court did not abuse discretion in ruling moving party failed to make prima facie case to modify custody).

 Here, a major part of father's endangerment allegation was mother's allegedly poor judgment in exposing the children to her father. At the hearing on his motion, father seemed to allege the existence of other examples of mother's poor judgment, but he did not identify or describe any of his "other examples" of mother's allegedly poor judgment. Thus, even if father's allegations are taken at face value, the district court's refusal to hold an evidentiary hearing is correct for two reasons. First, because father's assertions of endangerment that are based on reasons other than mother's father are conclusory, they do not require an evidentiary hearing. *See Smith v. Smith,* 508 N.W.2d 222, 227–28 (Minn.App.1993) (affirming denial of custody modification without an evidentiary hearing where, among other things, moving party's allegations were "too vague to support a finding of endangerment"); *Axford v. Axford,* 402 N.W.2d 143, 144–45 (Minn.App.1987) (affirming denial of custody modification motion without an evidentiary hearing where affidavit supporting motion "was devoid of allegations supported by any specific, credible evidence"). Second, the death of mother's father eliminated the only specifically identified source of endangerment. And lack of endangerment is fatal to a motion to modify custody. *Niemi v. Schachtschneider,* 435 N.W.2d 117, 119 (Minn. App.1989); *see Dabill v. Dabill,* 514 N.W.2d 590, 595 (Minn.App.1994) (describing endangerment as "threshold" for modifying custody).[5]

---

4. That the district court may consider assertions in affidavits by parties other than the moving party to the extent those assertions do not contradict the assertions of the moving party addresses father's argument that the district court erred by considering affidavits from both parties. And to the extent that father argues that the district court erroneously relied on statements in a county report indicating there had been no abuse by moth-

er's father, we reject that argument. Because father told the district court "I didn't state that [the parties' child] was sexually molested by [mother's father,]" the report's no-abuse statement was not contrary to father's assertions; it was used to put into context father's assertion that giving mother's father access to the children endangered them.

5. Father also argues that the district court failed to make certain findings regarding his

Father also cites Minn.Stat. § 518.175, subd. 5, and argues that mother's interference with his parenting time justifies an evidentiary hearing on his motion to modify custody. But father is improperly arguing Minn.Stat. § 518.175, subd. 5, as a basis for modifying custody for the first time on appeal. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating party cannot "obtain review by raising the same general issue litigated below but under a different theory [on appeal]"); *cf. Jacobson v. $55,900 in U.S. Currency,* 728 N.W.2d 510, 522–23 (Minn. 2007) (addressing application of *Thiele* ). Also, while deprivation of parenting time may be considered in addressing motions to modify custody, it is *not* an independently sufficient basis to modify custody. *Sharp v. Bilbro,* 614 N.W.2d 260, 263 (Minn.App.2000), *review denied* (Minn. Sept. 26, 2000).

## IV

The district court granted mother's motion to discharge the parenting consultant "for good cause." Father argues that the district court lacked "jurisdiction" to remove the parenting consultant and that the district court's factual premises for removal were incorrect.

### A. *"Jurisdiction"*

A "parenting-time expediter" is a creature of statute under Minn.Stat. § 518.1751 (2006), and, under that statute, may be removed for "good cause." The term "parenting consultant" is not used in the Minnesota statutes. In practice, the term refers to a creature of contract or of an agreement of the parties which is generally incorporated into (or at least referred to in) a district court's custody ruling. Thus, statutory "parenting-

time expediters" are distinct from non-statutory "parenting consultants." Here, mother failed to distinguish a parenting-time expediter from a parenting consultant, asking at the hearing to have the parenting *consultant* removed based on the statutory standard for removing a parenting-time *expediter.* Father challenges the grant of that motion.

While phrased in terms of the district court lacking "jurisdiction" to remove the parenting consultant, father candidly admits that the district court can, using a best-interests-of-the-child standard, remove a parenting consultant. Therefore, the crux of father's argument seems to be that the district court erred by using the statutory good-cause standard to remove the parties' nonstatutory parenting consultant. Because the parenting-consultant provision in the judgment does not state that the court can remove the consultant for good cause (or any other reason) and because there is no statutory authority pertaining to parenting consultants, he concludes that the district court could not remove the parenting consultant for good cause shown. We reject this argument. First, stipulated judgments are generally deemed binding contracts. *Shirk v. Shirk,* 561 N.W.2d 519, 521 (Minn. 1997). And courts "will not" construe a contract to produce "a harsh and absurd result." *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 394 (Minn.1998). Because there can be legitimate reasons to remove or replace a parenting consultant that do not directly bear on the children's best interests (*e.g.,* illness of the consultant), to preclude a court from removing a parenting consultant for legitimate non-best-interests-related reasons would be absurd. Second, as stated at the

motion to modify custody. But because the lack of endangerment is fatal to his motion to

modify custody, a lack of other findings can be ignored as harmless. Minn. R. Civ. P. 61.

hearing, the focus of mother's "good-cause" argument to remove the parenting consultant was that the consultant was not acting in the children's best interest due to the fact that the consultant "refuse[d] to contact [the children's therapist] to monitor the reunification plan ... [and] has also been hard to work with." Thus, the children's best interests, which father admits is a valid basis for removing the consultant, were a major part of the alleged good cause for the requested removal.

## B. *Factual Premises*

Father also challenges the removal of the parenting consultant, citing certain letters to the district court from the consultant in which the consultant states that the district court misunderstood the relevant facts. Because these letters are included in the appendix to mother's brief, they apparently had some place in the district court proceedings. Father's argument, however, is problematic. While he states that the letters were written by the parenting consultant after "the order [removing the parenting consultant,]" one letter is dated four days after the hearing and five days before the written order, suggesting that if the district court saw the letter before it issued the order, it rejected the letter's contents. And the other letter is undated. Also, neither letter is signed. On this record, we will not reverse the district court's decision regarding the parenting consultant.

## V

On March 8, 2005, mother moved for various types of relief, including a court designation of father as a "nuisance litigant." To support her motion, mother cited pre–1999 caselaw. Mother's motion was reserved and renewed until her February 17, 2006 motion, when she again asked the district court for various types of relief, including a determination that father was a nuisance litigant. Both mother's motions asking to have father declared a nuisance-litigant and the orders reserving that question omitted mention of Minn. R. Gen. Pract. 9.01–.07, which addresses frivolous litigation. Without citing any authority, the district court's March 8 order ruled father to be a "nuisance litigant," and required that he obtain the court's permission before filing future motions. Father challenges that determination, arguing that the district court failed to abide by the procedures set out in rules 9.01–.07 and Minn. R. Civ. P. 11.

Father is correct. Rule 9.01 requires that motions to designate a party as a frivolous litigant be separate from other requests for other relief and that the motion not be filed unless, within 21 days after the motion is served, the allegedly offending claim, motion or request is not withdrawn or properly corrected. *Cf.* Minn. R. Civ. P. 11.03(a)(1) (reciting similar rule). Here, each of mother's requests to have father declared a "nuisance litigant" were apparently not separate from other requested relief, and it does not appear that the 21–day safe-harbor provision was honored. Further,

> [i]f the court determines that a party is a frivolous litigant [under rule 9.01–.07] and that security or sanctions are appropriate, it shall state on the record its reasons supporting the determination.... *An order imposing preconditions on serving or filing new claims, motions, or requests shall only be entered with an express determination that no less severe sanction will sufficiently protect the rights of other litigants, the public, or the courts.*

Minn. R. Gen. Pract. 9.02(c) (emphasis added). Here, while the district court found father a "nuisance litigant," it did so

without reference to rule 9.01–.07, did not address the definition of a "frivolous litigant" under Minn. R. Gen. Pract. 9.06(b), and, while it required father to obtain permission from the court for any future filings, it did not find that "no less severe sanction will sufficiently protect the rights of other litigants, the public, or the courts." *See* Minn. R. Gen. Pract. 9.07 cmt. (stating "[r]ule 9.01 also requires that the court enter findings of fact to support any relief ordered under [this] rule, and this requirement should be given careful attention in the rare case where relief under this rule is necessary.").[6] Thus, not only does it appear that the procedural requirements of rules 9.01–.07 were not satisfied, but it is unclear whether the district court applied rules 9.01–.07 or considered their substantive requirements when it made its ruling. Therefore, we reverse the determination that father is a nuisance litigant and remand for the district court to address whether rules 9.01–.07 were actually satisfied here. *Cf. Clark v. Clark,* 642 N.W.2d 459, 465–66 (Minn.App.2002) (noting use of an incorrect standard to resolve an issue constitutes an abuse of discretion and remanding for use of the correct standard). Whether to reopen the record on remand shall be discretionary with the district court, and any determination that rules 9.01–.07 were not satisfied shall not preclude the district court from imposing other sanctions, if appropriate.

▮ All of the caselaw mother cites to support her argument to affirm the district court predates the 1999 enactment of the rules 9.01–.07. Because those cases lack either or both of the procedural and substantive protections of rules 9.01–.07, to rule that those authorities are still good

law would undermine rules 9.01–.07. Therefore, we conclude that, to the extent caselaw predating rules 9.01–.07 differs from those rules, that caselaw has been superseded by the rules. *Cf. Powell v. Anderson,* 660 N.W.2d 107, 119 (Minn. 2003) (noting holding in *Uselman v. Uselman,* 464 N.W.2d 130, 139 (Minn.1990) was superseded by statute); *Morey v. Peppin,* 375 N.W.2d 19, 22 (Minn.1985) (noting "statutes have superseded the common law in most aspects of family law.").

## VI

The district court's March 8 and May 15 orders award mother $2,000 and $8,712.50 in conduct-based attorney fees, respectively. Father challenges both awards. Conduct-based fee awards may be awarded against a party who unreasonably contributes to the length or expense of the proceeding and are discretionary with the district court. Minn.Stat. § 518.14, subd. 1 (2006); *Sharp,* 614 N.W.2d at 264.

### A. *March 8 Order*

Because father makes no argument specific to the March 8 award of $2,000, he waived the issue. *Balder v. Haley,* 399 N.W.2d 77, 80 (Minn.1987); *see State, Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.,* 558 N.W.2d 480, 480 (Minn. 1997) (declining to address issue absent adequate briefing); *State v. Modern Recycling, Inc.,* 558 N.W.2d 770, 772 (Minn. App.1997) (stating assignment of error in brief based on mere assertion is waived unless prejudicial error is obvious on mere inspection). Moreover, the district court stated that it awarded the fees because father unreasonably contributed to the length and expense of the proceeding by litigating a question mother was prepared

---

6. There are similar findings requirements in Minn. R. Civ. P. 11.03(c). Here, however, because rule 11 was not mentioned by the district court, the district court did not identify any conduct that would violate that rule.

to settle. Because mother's willingness to settle the issue is uncontested, we will not reverse the fee award in the March 8 order.

### B. *May 15 Order*

The May 15 order is internally inconsistent regarding the amount of attorney fees wife sought, stating at one point that she sought $8,712.50 and stating at another point that she sought $7,712.50 and that this amount of fees is reasonable. The May 15 order then awards wife $8,712.50 in conduct-based fees. Not mentioning the portion of the order stating that wife seeks fees of $8,712.50, husband argues that the finding that $7,712.50 in attorney fees is reasonable does not support the award of $8,712.50. Mother admits that she initially sought $7,712.50 in fees, but states that she requested an additional $1,000 in fees when husband sought to extend the contempt hearing to a second day. Father does not challenge this assertion, and the district court apparently adopted it, stating that "[t]he evidentiary hearing took place on two separate days. [Mother] had to incur at least an additional day's worth of attorney's fees as a result." Therefore, we deem the reference to $7,712.50 to be a typographical error.

The district court based the May 15 fee award on "[father's] unreasonable contribution to the delay and the expense of this proceeding, by refusing to pay spousal maintenance arrearages, when he clearly had the ability to do so." Father's argument that he lacked the ability to pay maintenance arrearages, and, therefore, that the district court should not have awarded the attorney fees, is addressed by our determination that the record supports the contempt determination. Father also argues that the May 15 award includes attorney fees for noncontempt/nonarrearages work by mother's attorney. But the

September 19, 2005 order indefinitely continuing the contempt hearing states:

> [Mother] has expended considerable attorney fees in vindicating her rights as provided for in the Amended Judgment and Decree in order to receive spousal maintenance. She requests, at a minimum, that she should be awarded $5,000 . . . it is best that the court reserve this issue until there is a final determination on the total amount of spousal maintenance arrears.

And the affidavit of mother's attorney supporting mother's initial request for $7,712.50 shows that amount to be $2,632.50 for attorney fees and $80.00 in costs associated with the hearings producing the May 15 order, "on top of the attorney's fees and costs previously expended by me in this matter, totaling $5,000. The Court reserved a final decision regarding these attorney's fees [in the September 19 order]." Finally, we reject father's argument that the fee award is improper because mother also contributed to the length and expense of these proceedings by improperly limiting father's access to the children. Improper conduct by one party does not justify improper conduct by the other. Also, any length or expense added to this proceeding by mother's alleged withholding of parenting time is distinct from father's maintenance-related contempt proceedings.

## VII

The May 15 order finding father in contempt is based on a hearing occurring on March 22 and April 14, 2006. Father argues that the district court should have continued the March 22 hearing because the attorney representing father that day was unaware that an evidentiary hearing would occur until counsel arrived at the courthouse, and that the lack of a continuance deprived father of due process of law. Generally, whether to continue a

hearing is discretionary with the district court. *Maranda v. Maranda,* 449 N.W.2d 158, 167 (Minn.1989). And it is undisputed that due process of law requires notice and an opportunity to be heard.

 Even if father was deprived of adequate notice or an adequate opportunity to be heard, or both, at the March 22 hearing, that fact does not explain why any such defect could not be remedied by the April 14 hearing. While father's reply brief states that "the second day [of trial] was limited to [father] calling another witness" and that "[h]is testimony was already completed on the first day[,]" the transcript of the April 14 hearing includes more than 40 pages of direct and cross-examination testimony from father, and an additional 20 pages of direct and cross-examination testimony from a witness called by father. Also, at the end of the April 14 hearing, the district court solicited proposed orders from the parties. Thus, after father was allegedly denied due process of law at the March 22 hearing, he was afforded an opportunity to testify and be cross-examined, to call a witness, and to tender a proposed order to the court. These circumstances show neither a denial of due process of law nor an abuse of the district court's discretion in denying father's requested continuance. *Cf. Tamarac Inn, Inc. v. City of Long Lake,* 310 N.W.2d 474, 478 (Minn.1981) (rejecting allegation of deprivation of due process of law where a subsequent hearing occurred).

### VIII

The May 15 order found father in contempt for not paying maintenance, and set purge conditions. The July 31 order found father had not purged his contempt and directed father's incarceration. The crux of the district court's finding of father's ability to comply with his maintenance obligation and to purge his contempt was its findings regarding the profitability of the business awarded father in the dissolution judgment.

Father argues that his contempt proceeding was defective because it failed to satisfy three requirements for a viable contempt proceeding: an adequately noticed hearing to show compliance or the reasons for failure to comply with the purge conditions, a formal determination by the district court of his failure to comply and that confinement will aid in producing compliance, and an opportunity to show an inability to comply despite a good faith effort to do so. *See Hopp v. Hopp,* 279 Minn. 170, 170, 156 N.W.2d 212, 214 (1968) (listing requirements for valid contempt procedure).

Our determination that the lack of a continuance of the March 22 hearing is not reversible error addresses father's argument regarding lack of notice. The remainder of father's procedural challenges are inconsistent with the record. Both the March 22 and April 14 hearings addressed the financial health of father and his business, and the resulting May 15 order found both that father's "failure to pay spousal maintenance" was "deliberate and willful[,]" and that "[a]t all times relevant to these proceedings, [father] had the opportunity and ability to make said payments in a timely manner." The May 15 order also set a review hearing. After that review hearing, which addressed the reasons for father's failure to comply, the resulting July 31 order stated that father failed to introduce "any documentary evidence to prove that his current financial circumstances prevent him from meeting the purge conditions," that father "inexcusably failed to comply with the purge conditions[,]" and that father "has not proved an excuse for his failure to meet the purge conditions[,] . . . continues to have the ability to pay [maintenance,] and . . . confine-

ment is likely to produce compliance." Thus, we reject father's *Hopp*-based arguments.

Father also challenges the sufficiency of the evidence that he was able to comply with the court's order. A district court's findings of fact will not be altered unless clearly erroneous. Minn. R. Civ. P. 52.01. The May 15 order states that father's testimony, financial and otherwise, was not credible. And appellate courts defer to district-court credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988). The July 31 order makes similar statements about father's credibility. To support his assertion that he lacked the financial ability to pay maintenance, father states that he had to liquidate his retirement account to pay his arrearages. But both the May 15 and the July 31 orders acknowledge father's allegations that he will have to liquidate his retirement account to pay his arrearages, and rule against him anyway. Absent documentation to support his factual assertions and with his testimony deemed not credible, we reject father's challenges to the district court's finding regarding his finances.

Finally, father argues that the determination that he is a "nuisance litigant" requires him to get permission from the district court to make a motion to reduce his maintenance obligation, and that no such permission has been given. But because we are remanding the frivolous litigant question, it is currently premature at this time to address any limits on his ability to seek a maintenance reduction. Also, father does not allege that he has sought permission to move to reduce his maintenance obligation.

## DECISION

We deny mother's motion to dismiss the portion of appeal A06–882 in which father challenges the district court's denial, without an evidentiary hearing, of his motion to modify custodial provisions of the parenting plan. We affirm all of the district court's other determinations, except its determination that father is a nuisance litigant. We reverse that determination, noting that caselaw on the subject of nuisance or frivolous litigation is, to the extent it is inconsistent with Minn. R. Gen. Pract. 9.01–.07, superseded by those rules, and we remand for the district court to address whether Minn. R. Gen. Pract. 9.01–.07 are satisfied here. On remand, whether to reopen the record shall be discretionary with the district court.

**Affirmed in part, reversed in part, and remanded; motion denied.**