*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2286**

In re the Marriage of:
Terrence Reily Peters, petitioner,
Respondent,

vs.

Deanna Lynn Peters,
Appellant.

**Filed September 8, 2014
Affirmed
Bjorkman, Judge**

Scott County District Court
File No. 70-2004-26188

Mark Anderson, Anderson Law Office, Prior Lake, Minnesota (for respondent)

John T. Burns, Jr., Burns Law Office, Burnsville, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

# U N P U B L I S H E D   O P I N I O N

**BJORKMAN**, Judge

Appellant mother challenges the district court's denial of her motions related to various parenting-time and medical-support issues. Appellant argues that the district court abused its discretion by (1) denying her requests to modify the parties' medical-

support obligations, (2) declining to order the parties to commence co-parenting therapy, and (3) denying her attorney-fees request. We affirm.

## FACTS

Appellant Deanna Peters (mother) and respondent Terrence Peters (father) are the parents of Z.P., born February 2002. The parties' marriage was dissolved on February 2, 2007, after a 12-day trial. Both parties sought custody of Z.P., but the district court found that mother had "deliberately interfered" with father's parenting time and would "most likely" continue to do so, and awarded father sole physical and legal custody, with the parties "shar[ing] parenting time as evenly as possible." The dissolution judgment also required mother to pay father $500 in monthly child support and to provide health-insurance coverage for Z.P. but required the parties to pay equally toward Z.P.'s unreimbursed medical and dental expenses. Based on father's increased income, child support was modified in 2009; father now pays $508 in monthly child support to mother. But the parties' other financial obligations have remained unchanged.

In late 2011, mother moved for custody modification, requesting joint legal and physical custody. The parties appointed Anne Tuttle as parenting consultant. They agreed that Tuttle would address mother's pending motion and all future issues of parenting time, and facilitate communication between the parties and with outside sources (teachers, therapists, etc.).

In a June 2012 decision, Tuttle rejected the modification request, finding that mother "appears to have continued her campaign to have sole authority over [Z.P.] that started before entry of the Judgment and Decree" and "does so by micro-managing and

2

undermining Father's authority to make decisions." Tuttle also found that Z.P. "is being placed in the middle of a continuing battle between the parties in regard to their own determination as to what is best for [him]," which is "very detrimental" to him. She directed father to enroll Z.P. in therapy.

Father selected therapist Joe Noble, who is not covered by mother's insurance network. Mother objected to the cost of using an out-of-network provider but agreed to have Z.P. begin therapy with Noble. Mother initially paid half of the therapy expenses but stopped contributing after six appointments, asserting that she would only pay for an in-network provider. An outstanding balance of $963.75 accrued by early 2013, and Z.P.'s sessions with Noble ceased.

Around the same time, mother requested co-parenting therapy, but father resisted. When Noble suggested that co-parenting therapy might be beneficial and recommended a therapist in his group, father agreed to participate. But mother refused to work with the recommended therapist, claiming a conflict of interest. Tuttle asked mother to suggest a therapist within her insurance network. Mother agreed but failed to do so.

The parties presented the therapy disputes and several other parenting-time issues to Tuttle in June 2013. Tuttle found that "[i]t continues to be of uppermost importance that [Z.P.] continues in therapy with Joe Noble as he must be able to have a place to deal with the conflict between his parents in a healthy manner," and decided that "[Z.P.] shall continue to attend therapy with Joe Noble as he recommends." She also decided:

> No modification to the parenting time schedule will be
> considered until such time as the parties are able to cooperate
> to have [Z.P.] regularly attend therapy with Mr. Noble[] and

that they are able to cooperate and engage in co-parenting therapy. If the parties cannot agree on a therapist, names shall be submitted and a decision made as to who will provide this service.

Tuttle declined to address the therapy costs because her appointment order does not authorize her to decide financial matters. But she noted her concern that the financial disputes disrupted Z.P.'s therapy and observed that she has "no reason to believe that either party has a lack of income in order to provide therapy for [Z.P.]."

Mother moved the district court for relief from Tuttle's decisions and to modify the medical-support order. In relevant part, mother asked the district court to (1) order the parties to begin co-parenting therapy with a therapist selected by the court from mother's insurance network and share equally any uncovered expenses; (2) order father to pay Noble's outstanding balance; (3) order the parties to find an in-network therapist for Z.P. and thereafter share any unreimbursed costs according to their respective shares of parental income for determining child support (PICS), or order father to be solely responsible for the cost of continued therapy with Noble; and (4) modify the parties' obligations for uncovered medical and dental expenses to comport with their respective PICS. Mother also sought need-based and conduct-based attorney fees and costs.

At the hearing on mother's motions, the district court orally directed father to pay the outstanding balance owed to Noble but indicated that everything else "stays the same." In its written order, the district court did not make specific factual findings but ordered the parties to "follow the recommendations of the Parenting Consultant." Mother

4

moved for amended findings and sought additional attorney fees, which the district court denied. Mother appeals.

## D E C I S I O N

**I. The district court did not abuse its discretion by declining to modify the medical-support order.**

Mother moved to modify the existing medical-support order to comport with the parties' respective PICS (68% father, 32% mother), as determined in 2009. She also sought a specific modification based on a purported agreement between the parties as to the cost of Z.P.'s therapy with Noble. She now challenges the district court's denial of both requests.

The district court has broad discretion to determine whether to modify an existing support obligation. *Haefele v. Haefele*, 837 N.W.2d 703, 708 (Minn. 2013). "A district court abuses its discretion when it resolves a matter in a manner that is against logic and the facts on record." *Youker v. Youker*, 661 N.W.2d 266, 269 (Minn. App. 2003) (quotation omitted), *review denied* (Minn. Aug. 5, 2003). A district court may modify a support order, including a medical-support order, upon a showing that a substantial change in circumstances makes the original award unreasonable and unfair. Minn. Stat. § 518A.39, subd. 2(a) (2012); *see also* Minn. Stat. § 518A.41, subd. 5(a) (2012) (stating that "medical support is considered child support"). "The moving party has the burden of proof in support-modification proceedings." *Bormann v. Bormann*, 644 N.W.2d 478, 481 (Minn. App. 2002) (citing *Johnson v. Johnson*, 304 Minn. 583, 584, 232 N.W.2d 204, 205 (1975)).

5

**Modification of the medical-support order**

The medical-support statute requires a district court to "order that the cost of health care coverage and all unreimbursed and uninsured medical expenses under the health plan be divided between the obligor and obligee based on their proportionate share of the parties' combined monthly PICS." Minn. Stat. § 518.A.41, subd. 5(a) (2012). While this requirement did not apply to the parties' dissolution proceeding, which was commenced in December 2004, it does apply to mother's modification motion. *See* 2005 Minn. Laws, ch. 164, § 22, at 1908; 2006 Minn. Laws, ch. 280, § 44, at 1145 (providing that 2005 "provisions used to calculate parties' support obligations apply to actions or motions filed after January 1, 2007"). But the fact that the law governing medical support has changed does not itself require modification of an existing order. *See* Minn. Stat. § 518A.39, subd. 2(i) (2012) (stating that generally, "an enactment, amendment, or repeal of law does not constitute a substantial change in the circumstances for purposes of modifying a child support order"). Mother must still demonstrate that the parties' circumstances have changed substantially and that the order to share the costs equally is unreasonable and unfair in light of the new circumstances.

To satisfy both of these burdens, mother pointed only to the modification of basic child support in 2009. At that time, mother established that the parties' financial circumstances had changed from roughly equal incomes at the time of the dissolution to father earning nearly twice as much as mother and that it was unreasonable and unfair for her to continue to pay father child support under those circumstances. But she did not argue that this change rendered any aspect of the medical-support order unreasonable and

unfair. Even in the current proceeding, mother has not proffered any evidence that she is unable to pay half of Z.P.'s unreimbursed medical expenses or made any other showing or argument that the existing order is unreasonable and unfair. She asserts only that "there is no reason not to" modify the medical-support order.

The district court found this showing insufficient. In oral findings at both the original motion hearing and the hearing on mother's motion for amended findings, the district court emphasized that the existing medical-support order was established after a 12-day trial. *See* Minn. R. Civ. P. 52.01 (stating that findings of fact may be made orally and recorded in open court); *Rigwald v. Rigwald*, 423 N.W.2d 701, 703 (Minn. App. 1988) (applying this aspect of rule 52.01 in a family law appeal). And consistent with the district court's and Tuttle's previous findings about mother's pattern of interfering with father's parental authority, the district court succinctly but clearly indicated that it is in Z.P.'s best interests for mother to pay her half of the therapy expenses rather than spending money on attorney fees to dispute those expenses. While these findings do not expressly address the unreasonable-and-unfair standard, they plainly reflect the district court's implicit determination that the existing medical-support order is both reasonable and fair. We agree with mother that it may have been "the better practice" for the district court to prepare written findings expressly addressing the statutory criteria, but it was not required to do so, particularly in light of mother's failure to make any showing of unreasonableness and unfairness. *See Johnson*, 304 Minn. at 584, 232 N.W.2d at 205-06 (citing Minn. R. Civ. P. 52.01); *see also Thielbar v. Defiel*, 378 N.W.2d 643, 645 (Minn. App. 1985) (affirming denial of child-support modification, despite lack of specific

factual findings, because moving party "did not produce evidence that the [change in circumstances] make the original support award unfair and unreasonable"). On this record, we conclude the district court did not abuse its discretion by denying mother's motion to modify the medical-support order.

**Modification of the parties' obligations for Z.P.'s therapy expenses**

Mother's second challenge to the existing medical-support order relates solely to unreimbursed expenses associated with Z.P.'s therapy with Noble. Mother seeks to carve these expenses out based on the parties' purported agreement to handle them differently. We are not persuaded. Medical care includes mental-health care. Accordingly, the existing medical-support order controls, unless and until a substantial change in circumstances renders the order unreasonable and unfair. As we discussed above, mother made no such showing.

Moreover, all forms of child support relate to the "nonbargainable interests of children." *Maxson v. Derence*, 384 N.W.2d 583, 585 (Minn. App. 1986). Even an agreement between the parties cannot trump the court's responsibility for the child's best interests. *See Tammen v. Tammen*, 289 Minn. 28, 30, 182 N.W.2d 840, 842 (1970). That responsibility is at the core of the district court's decision here.

In its oral findings, the district court accepted Tuttle's determination that Z.P.'s need for therapy flows from the "high conflict" between the parties, and that it is in Z.P.'s best interests to continue therapy with Noble. The district court found that mother agreed to send Z.P. to therapy with Noble, then refused to pay "her portion" solely "for [her] own selfish reasons," because Noble is not covered by her insurance network. The

8

district court also roundly criticized mother's decision to expend funds on attorney fees to dispute responsibility for Z.P.'s therapy expenses, rather than "thinking about [her] son first" and simply paying her half of those expenses. On this record, we discern no error in the district court's conclusion that it continues to be reasonable and fair, and in Z.P.'s best interests, that the parties share equally the cost of Z.P.'s therapy with Noble.

**II.     The district court did not abuse its discretion by declining to order the parties to commence co-parenting therapy.**

Mother also argues that the district court abused its discretion by denying her request to order the co-parenting therapy that Tuttle made a prerequisite to any parenting-time changes. Whether to order the parties to participate in co-parenting therapy, like any parenting-time decision, turned on Z.P.'s best interests. *See* Minn. Stat. § 518.175, subd. 1(a) (2012) (establishing the child's best interests as the goal in parenting-time decisions). A district court has broad discretion over parenting-time issues. *See Dahl v. Dahl*, 765 N.W.2d 118, 123 (Minn. App. 2009).

In oral findings on the record, the district court credited Tuttle's determination that it would not be constructive to order the parties to begin co-parenting therapy or to select a therapist for them, stating "if [mother] doesn't want to go to coparenting therapy, she doesn't have to go." It was well within the district court's discretion to decline to intercede in a parenting-time dispute that it believes Tuttle is addressing competently.

**III.     The district court did not abuse its discretion by denying mother's request for attorney fees.**

We review for abuse of discretion the denial of a motion for attorney fees in a family-law proceeding. *See Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999) (need-

9

based fees); *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 295 (Minn. App. 2007) (conduct-based fees).  A district court abuses its discretion when it misapplies the law or makes a decision contrary to the facts in the record.  *In re Adoption of T.A.M.*, 791 N.W.2d 573, 578 (Minn. App. 2010).

**Conduct-based fees**

A district court may grant conduct-based attorney fees "against a party who unreasonably contributes to the length or expense of the proceeding."  Minn. Stat. § 518.14, subd. 1 (2012).

Mother asserts that she is entitled to attorney fees in excess of $4,300 that she incurred trying to enforce father's promise to pay the costs of Z.P.'s therapy with Noble.  We disagree.  First, the therapy issue was only one of many presented to the district court, so the conduct in question would not justify an award of all of mother's attorney fees.  Second, even if the district court had accepted mother's argument that father's conduct necessitated a motion, it was conduct that led up to the litigation process; it was not part of the litigation process.  "Because conduct-based attorney fees under Minn. Stat. § 518.14, subd. 1, are to be based on behavior occurring during the litigation process, behavior occurring outside the litigation process is not a basis for a conduct-based fee award under that provision."  *Geske v. Marcolina*, 624 N.W.2d 813, 819 (Minn. App. 2001).  Because mother neither alleged nor demonstrated that father engaged in conduct that contributed to the length or expense of the proceeding, the district court did not abuse its discretion by denying conduct-based fees.

10

**Need-based fees**

A district court "shall" award need-based attorney fees if it finds that (1) the fees are necessary for a good-faith assertion of the recipient's rights and "will not contribute unnecessarily to the length or expense of the proceeding," (2) the payor has the ability to pay the fees, and (3) the recipient lacks the ability to pay the fees. Minn. Stat. § 518.14, subd. 1 (2012). The party seeking fees must produce evidence that she lacks the ability to pay them herself. *Moravick v. Moravick*, 461 N.W.2d 408, 409 (Minn. App. 1990); *see also In re Marriage of Sammons*, 642 N.W.2d 450, 458 (Minn. App. 2002) (refusing to award attorney fees because the party failed to establish "the existence of those elements required by section 518.14 that would entitle her to need-based attorneys' fees").

The district court's oral findings characterize mother's motions as a misuse of funds that could otherwise be used for Z.P. and little more than a means of interfering with father's ability to exercise his authority as Z.P.'s sole legal custodian. This goes beyond a mere determination that mother's claims fail on the merits. *See Phillips v. LaPlante*, 823 N.W.2d 903, 907 (Minn. App. 2012) ("An award of need-based attorney fees does not depend in any way on whether the party seeking fees is the prevailing party."), *review denied* (Minn. Aug. 6, 2013). The record supports the district court's determination that mother's motions were not necessary for a good-faith assertion of her rights.

Moreover, the record does not establish that mother lacks the ability to pay the fees. Mother asserted in her affidavit that she "had to borrow money" from her mother to bring the motions, but she did not otherwise substantiate that claim with any evidence of

11

her current expenses.[1] Because mother failed to demonstrate that she lacks the ability to pay her attorney fees, the district court did not abuse its discretion by denying her request for need-based fees.

**Affirmed.**

---

[1] The most recent evidence of mother's expenses is from 2009.