*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1142**

In re the Marriage of:

Sarah Mae DeVille, petitioner,
Respondent,

vs.

Darren Lee Hickey,
Appellant.

**Filed May 13, 2024
Affirmed
Kirk, Judge***

Hennepin County District Court
File No. 27-FA-19-1064

John E. Roach, RAM Law, P.L.L.C., Roseville, Minnesota (for respondent)

Darren Lee Hickey, Mound, Minnesota (pro se appellant)

Considered and decided by Johnson, Presiding Judge; Cochran, Judge; and Kirk, Judge.

**NONPRECEDENTIAL OPINION**

**KIRK**, Judge

In this post-marital-dissolution dispute, appellant-father argues that the district court erred by (1) granting respondent-mother's motion for conduct-based attorney fees;

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

(2) denying father's motion to remove the parenting consultant; (3) denying father's motion to remove the parenting-consultant process from the dissolution judgment and decree; and (4) denying father's motion to divide child-related tax benefits between the parties. We affirm.

**FACTS**

Appellant-father Darren Lee Hickey and respondent-mother Sarah Mae deVille[1] were married in 2017 in Hennepin County and have two minor children. Mother petitioned for dissolution of marriage in February 2019. In November 2020, the parties stipulated to an order appointing a parenting consultant (PC) to help them resolve disputes regarding the children. Under the stipulated order, the district court authorized the PC to "interpret unclear provisions in the parents' stipulations and/or court orders;" decide parenting issues not considered by a prior or existing court order; decide changes to the parenting time schedule; and "decide revisions to previously decided parenting issues as needed to meet changing circumstances."[2] If either parent was in disagreement with a decision of the PC, the stipulated order provided that the party bring a motion to contest the decision. The parties agreed that the PC would serve a three-year term, and that if a different PC was

---

[1] The case caption in the district court identified respondent-mother as "Sarah Mae Deville." But respondent is identified her appeal brief as "Sarah Mae deVille," and the order for judgment identifies her as "Sarah Mae DeVille." The caption of this opinion conforms to the caption used in the district court's order for judgment. *See* Minn. R. Civ. App. P. 143.01. But we use respondent's preferred name throughout the body of the opinion.

[2] On appeal, neither party is contesting the PC's authority to make such decisions.

needed because the selected one was unavailable, did not agree to serve, or was removed by written agreement of the parents or by court order, then a new PC would be appointed.

By May 2021, the PC determined the parties remained high conflict and could not communicate or make decisions effectively. The PC awarded sole legal custody to mother in a decision dated August 29, 2021. In her decision, the PC noted that father had little willingness to co-parent with mother. In January 2022, the PC withdrew because father stopped paying his portion of her retainer fee.

In March 2022, father moved the district court to find mother in contempt of court based on the parties' inability to effectively communicate about the children's medical and psychological care. Mother filed a responsive motion asking, among other things, that the district court deny father's motion as a whole, and that the district court order father to pay his portion of the retainer for the PC and cooperate with continued retention of the PC for the entirety of the PC's term. Mother also requested costs and attorney fees incurred due to father unreasonably contributing to the length and expense of the proceedings.

Father filed a responsive motion in August 2022. Father moved the district court to order mother to "comply in selecting" a new PC and to award him $7,705 in conduct-based attorney fees and costs "pursuant to Minn. Stat. § 518.14."

Shortly after, the parties stipulated to appointing the new PC. The parties agreed that she would serve a two-year term "from the date the PC signs the Fee Agreement" and that the term could be extended by executing a new fee agreement at the end of the term. The stipulation provided that either party "may file a motion in district court for the removal of the PC." But the district court would only grant the motion "if a parent shows

good cause for the removal." The parties agreed to be equally responsible for the PC's retainer and any fees incurred in the process.

The district court held a hearing on the parties' motions in August 2022, and then set another review hearing for September. Following the September 2022 hearing, the district court filed findings of fact and an order denying both parties' motions for conduct-based attorney fees and "any other pending motion not addressed by" the order.

In mid-December 2022, mother moved to hold father in contempt of court and to compel him to sign the new PC's intake forms and pay his half of the new PC's retainer fee. The district court addressed the matter at a hearing at the end of January 2023, and then ordered that father complete the intake forms.

Soon after, the district court entered findings of fact, conclusions of law, order for judgment and judgment and decree, dissolving the parties' marriage. The district court awarded sole legal custody of the children to mother and granted joint physical custody to both parties. Regarding tax dependency exemptions, the district court determined that "[t]he most equitable approach [was] to award each parent one of the minor children" and "[b]ecause [mother] claimed both minor children during these lengthy dissolution proceedings and the parties did not share the tax refunds and credits [mother] received, the youngest child [was] assigned to [father]."

In April 2023, mother moved the district court to find father in contempt for failing to: execute the new PC's fee agreement, pay the new PC's retainer fee, and otherwise cooperate with the appointment and retention of the new PC. Mother requested that the district court order father to sign and submit the fee agreement and compel father to pay

4

one-half of the new PC's fee agreement. In the alternative, mother asked the court to enter a $2,500 money judgment against father for reimbursement of the amount mother would pay to retain the new PC. Finally, mother asked the court to award "reasonable costs and [attorney] fees due to [father] unnecessarily and unreasonably contributing to the expense and duration of litigation," and any other relief the court deemed necessary and just.

Father filed a responsive motion the next month. Among other things, father moved to discharge the new PC; modify the judgment and decree to remove the language requiring the parties to resolve parenting disputes through the PC; and order the parties to evenly split childcare tax credits and child-related stimulus payments received since the dissolution proceedings began.

At the June 1, 2023, motion hearing, mother's attorney informed the district court that father was not cooperating with the retention of the new PC and had still not paid his portion of the new PC's retainer fee. Mother's attorney also reported that father refused to electronically sign the new PC's fee agreement. The total retainer fee was $5,000, with each party paying half. If father could not pay his half, mother's attorney requested that the district court enter a $2,500 judgment against father and hold him in contempt of court for failing to cooperate with the PC, per the district court's August 2022 order. Mother's attorney asked the district court to confine father to jail if he did not agree to sign the fee agreement.

Father appeared pro se at the hearing. He argued that, upon receiving the new PC's fee agreement, he immediately requested that she send him a printed copy so that he could suggest changes. A representative from the new PC's office responded by stating that the

5

new PC would not negotiate the fee agreement. Father alleged that the new PC ignored his correspondence and was "dismissive" of his concerns. Father argued there was nothing in the correspondence from the new PC's office that specified that the fee agreement needed to be signed electronically. Father assured the district court that he printed, signed, and sent the fee agreement to the new PC's office via "certified mail returned receipt" but the new PC would only accept an electronic signature. The district court agreed to issue an order directing the new PC to accept father's printed signature if necessary.

After the hearing, the district court filed findings of fact and order for judgment. The district court denied mother's contempt motion based on father's failure to complete the new PC's fee agreement but reserved the motion for contempt based on father's failure to pay his share of the new PC's retainer fee. The district court granted mother's motion for a money judgment against father for $2,500—his half of the new PC's retainer fee. The district court also granted mother's motion for reasonable attorney fees and costs incurred in having to bring the motion for contempt. Finally, the district court denied father's motions to remove the PC; amend the judgment and decree; and "split child care tax credits, stimulus payments and all other payments from either the State and Federal governments."

Soon after, the district court filed findings of fact and an order for judgment, awarding mother conduct-based attorney fees in the amount of $1,510.

After entry of a judgment, father appeals.

**DECISION**

**I.** **The district court did not abuse its discretion by awarding mother conduct-based attorney fees because the record supports the finding that father unreasonably contributed to the length and expense of the PC-process.**

First, father challenges the district court's award of conduct-based attorney fees, arguing that he did nothing to unreasonably contribute to the length of the proceedings.

"A conduct-based attorney-fee award is reviewed for an abuse of discretion." *Sanvik v. Sanvik*, 850 N.W.2d 732, 737 (Minn. App. 2014). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Bender v. Bernhard*, 971 N.W.2d 257, 262 (Minn. 2022) (quotation omitted).

Under Minnesota Statutes section 518.14, subdivision 1 (2022), the district court "shall award attorney fees, costs, and disbursements in an amount necessary to enable a party to carry on or contest" a divorce or child-support proceeding provided certain conditions are met. The district court is not "preclude[d] . . . from awarding, in its discretion, additional fees, costs, and disbursements against a party who unreasonably contributes to the length or expense of the proceeding." Minn. Stat. § 518.14, subd. 1.

"Generally, conduct-based attorney fees are to be based on the party's behavior occurring during the litigation process." *Baertsch v. Baertsch*, 886 N.W.2d 235, 238 (Minn. App. 2016) (citation omitted). The party moving for conduct-based attorney fees has the burden of showing that the other party's conduct "unreasonably contributed to the length or expense of the proceeding." *Geske v. Marcolina*, 624 N.W.2d 813, 818 (Minn. App. 2001) (citations omitted). The district court must make specific findings on a motion for

attorney fees. *Cf. Richards v. Richards*, 472 N.W.2d 162, 166 (Minn. App. 1999) (concluding that the district court "erred by failing to make specific findings" on the issue). "Fee awards under Minn. Stat. § 518.14 may be based on the impact a party's behavior has had on the costs of the litigation regardless of the relative financial resources of the parties." *Dabrowksi v. Dabrowski*, 477 N.W.2d 761, 766 (Minn. App. 1991) (citing *Holder v. Holder*, 403 N.W.2d 269, 271 (Minn. App. 1987)).

If a party takes positions that are "duplicitous and disingenuous and have had the effect of further delaying distribution, lengthening [the] litigation, and increasing the expense of [the] proceedings" then an award of conduct-based attorney fees is appropriate. *Redmond v. Redmond*, 594 N.W.2d 272, 276 (Minn. App. 1999).

The district court made specific findings to support its determination that father unreasonably contributed to the length of the PC-process. The district court found, "Each step in the [PC]-process has required court intervention to ensure that [father] complies with implementing the terms of the order that he agreed to while represented by counsel." Father's decision not to participate in the intake process, sign the fee agreement, and pay the PC fee was "deliberate and occurred over a period of many months (August 2022 through June 2023) and required several court hearings to address." Father's inaction "directly resulted in [mother] incurring attorney fees in the total amount of $1,510." The work described in the affidavit from mother's attorney "was performed and required for the benefit of and the proper representation of [mother] in this contempt process."

These findings are supported by the record. The original PC withdrew from service in January 2022, because father stopped paying his portion of her retainer fee. Then father

8

moved the district court to order mother to comply in selecting the new PC, and shortly thereafter, the parties stipulated to the appointment. Yet the November 2022 email correspondence between mother's attorney and father shows that father repeatedly ignored counsel's requests that he complete the intake paperwork provided by the new PC's office. This prompted mother to move the district court to hold father in contempt of court and to compel him to complete the paperwork. The district court addressed the matter at the January 31, 2023, hearing, and then ordered that father complete the intake forms. But father did not agree to sign the fee agreement until after mother filed another motion for contempt in April 2023. The new PC was appointed in August 2022, but father refused to sign the new PC's fee agreement until April 2023. Thus, father's refusal to cooperate with the PC-process directly contributed to the length of the proceedings.

As a result, it was not an abuse of discretion for the district court to award mother conduct-based attorney fees.

## II. The district court did not abuse its discretion by denying father's motion to remove the new PC.

Next, father insists that the district court abused its discretion when it denied his motion to remove the new PC because he alleges that the new PC was "untimely and uncommunicative with her clients, and through her staff has exhibited actions, attitudes, and antipathy towards [father] that brings serious question to her ability or willingness to treat [father] in a fair and just manner." This argument is unavailing.

"District courts have broad discretion on matters of custody and parenting time." *Hansen v. Todnem*, 908 N.W.2d 592, 596 (Minn. 2018). Appellate review "is limited to

whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Id.* (quoting *In re Custody of N.A.K.*, 649 N.W.2d 166, 174 (Minn. 2002)).

Parties to a dissolution are not precluded "from voluntarily agreeing to submit their parenting time dispute to a neutral third party or from otherwise resolving parenting time disputes on a voluntary basis." Minn. Stat. § 518.1751, subd. 4. (2022). The Minnesota Legislature has yet to define "parenting consultant." Generally, "the term refers to a creature of contract or of an agreement of the parties which is generally incorporated into (or at least referred to in) a district court's custody ruling." *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 293 (Minn. App. 2007). Minnesota Rule of General Practice 310.03(c)(2) states that "Parenting Consulting is a process defined by the agreement of the parties in which the Parenting Consultant (PC) incorporates neutral facilitation, coaching and decision making." The PC's authority comes directly from the parties' agreement. *See id.*

"Courts favor stipulations in dissolution cases as a means of simplifying and expediting litigation, and to bring resolution to what frequently has become an acrimonious relationship between the parties." *Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn. 1997). "Although considerable weight is given to stipulations intelligently entered with the benefit of counsel, in determining questions of custody the paramount issue remains the welfare and best interests of the children. The court must in every case exercise an independent judgment and is not bound by the stipulation." *Petersen v. Petersen*, 206 N.W.2d 658, 659 (Minn. 1973) (citation omitted). "[I]f a stipulation was improvidently made and in equity and good conscience ought not stand, it may be vacated." *Shirk*, 561 N.W.2d at 522.

10

A PC may be removed "for good cause" when the party can show that the PC was not acting in the children's best interest. *See Szarzynski*, 732 N.W.2d at 293-94 (concluding that a reversal of the district court's decision to remove a PC was not warranted when it was shown that the PC refused to contact the children's therapist to monitor the reunification plan and had been hard to work with). And "there can be legitimate reasons to remove or replace a PC that do not directly bear on the children's best interests (e.g., illness of the consultant)." *Id.* at 293.

Here, the district court relied on *Shirk* when it denied father's motion to remove the new PC. *See* 561 N.W.2d at 521 ("Stipulations are . . . accorded the sanctity of binding contracts."). The district court found that "[father] was represented by counsel when he signed the stipulated order, he understood the terms of the agreement, and he had worked with a parenting consultant previously." These findings are supported by the record. Father is the party that moved to court to order mother to comply in selecting the new PC. Shortly after, the parties stipulated to the new PC's appointment in an order filed August 8, 2022.

Nothing in the record suggests that the stipulation appointing the new PC was improvidently made. Nor has father argued or proven that the new PC acted contrary to children's best interests, or that there was any other legitimate reason to remove her from service as PC.

Thus, the district court appropriately exercised its discretion by denying father's motion to remove the new PC because father has not shown good cause to do so.

11

**III. The district court did not abuse its discretion when it denied father's motion to remove the PC-process from the dissolution judgment.**

Father also argues that the district court abused its discretion when it denied his motion to remove the PC-process from the dissolution judgment.

The district court's decision not to reopen a dissolution judgment and decree "will not be disturbed absent an abuse of discretion." *Kornberg v. Kornberg*, 542 N.W.2d 379, 386 (Minn. 1996). "On motion and upon terms as are just, the court may relieve a party from a judgment and decree, order, or proceeding under this chapter, except for provisions dissolving the bonds of marriage, annulling the marriage, or directing that the parties are legally separated . . . ." Minn. Stat. § 518.145, subd. 2 (2022). The district court may order a new trial or grant other relief as may be just for five reasons:

> (1)    mistake, inadvertence, surprise, or excusable neglect;
>
> (2)    newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under the Rules of Civil Procedure, rule 59.03;
>
> (3)    fraud, whether denominated intrinsic or extrinsic, misrepresentation, or other misconduct of an adverse party;
>
> (4)    the judgment and decree or order is void; or
>
> (5)    the judgment has been satisfied, released, or discharged, or a prior judgment and decree or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment and decree or order should have prospective application.

*Id.* The motion must be filed "within a reasonable time, and for a reason under clause (1), (2), or (3), not more than a year after the judgment and decree, order, or proceeding was

entered or taken." *Id.* "The sole relief from [a] judgment and decree lies in meeting the requirements of Minn. Stat. § 518.145, subd. 2." *Shirk*, 561 N.W.2d at 522.

Father has identified no reason under Minnesota Statute section 518.145, subdivision 2, for the district court to reopen the judgment and decree. The district court found that "[father] was represented by counsel when he signed the stipulated order, he understood the terms of the agreement, and he had worked with a [PC] previously." The record supports this finding because the parties had first stipulated to appointing the original PC in November 2020.

The parties continued to work with the first PC until she withdrew from service in January 2022 due to father refusing to pay his half of the retainer fee. And father is the party that moved the district court to order mother to agree to appoint the new PC, and he was represented by counsel when the motion was filed. Nothing in the record conveys that father signed the stipulation because of mistake, inadvertence, surprise, or excusable neglect. Nor does father's appellate brief suggest that there is newly discovered evidence, fraud, or that the judgment and decree or order is void.

Based on the above facts, the district court did not make findings of fact that are unsupported by the evidence, misapply the law, or deliver a decision against logic and the facts on record. *See Bender*, 971 N.W.2d at 262. Thus, the district court's denial of father's motion to amend the judgment and decree to remove the PC-process from the alternative-dispute provision, was an appropriate use of discretion.

13

**IV. Father's argument about childcare tax credits and child-related state and federal stimulus payments is forfeited.**

Finally, father asserts that the district court abused its discretion when it denied his motion to split tax dependency exemptions, stimulus payments, and all other child-related payments from the state or federal governments.

The district court ruled on this issue in February 2023, in its final judgment and decree dissolving the parties' marriage. Yet father moved the district court to order the parties to evenly split the child-related tax credits, stimulus payments, and other payments, in May 2023. As stated in a previous section, "[t]he sole relief from [a] judgment and decree lies in meeting the requirements of Minn. Stat. § 518.145, subd. 2." *Shirk*, 561 N.W.2d at 522. Furthermore, "[a]n assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief . . . will not be considered on appeal unless prejudicial error is obvious on mere inspection." *Schoepke v. Alexander Smith & Sons Carpet Co.*, 187 N.W.2d 133, 135 (Minn. 1971).

Here, the district court found that the parties had a 50/50 parenting time schedule and that both parties contribute significantly to their minor children's needs. The district court determined that "[t]he most equitable approach [was] to award each parent one of the minor children" and "[b]ecause [mother] claimed both minor children during these lengthy dissolution proceedings and the parties did not share the tax refunds and credits [mother] received, the youngest child is assigned to [father]."

Father has not shown the existence of any of the five criteria listed in Minnesota Statutes section 518.145, subdivision 2. Father cites no legal authorities supporting his

assertion, nor is there any obvious prejudicial error upon mere inspection. Thus, father's argument is forfeited.

**Affirmed.**