**In re the Marriage of Jane Louise KITCHAR, Appellant,**

**v.**

**John Thomas KITCHAR, Respondent.**

**No. CX–96–358.**

Court of Appeals of Minnesota.

Sept. 10, 1996.

Review Denied Oct. 29, 1996.

Considered and decided by PARKER, P.J., and RANDALL and SCHULTZ *, JJ.

## OPINION

RANDALL, Judge.

Appellant, Jane Kitchar, challenges the trial court's valuation of the homestead, division of property, and denial of attorney fees based on misconduct. Respondent, John Kitchar, challenges the trial court's refusal to credit him with mortgage payments, payment of real estate taxes, payment of home owner's insurance, and improvements made to the homestead during the separation. Both parties request attorney fees on appeal.

## FACTS

The parties were married in 1965 and separated in the spring of 1987. They remained separated for seven years before appellant filed for dissolution. The case went to trial in May and June of 1995. Although the long separation caused some difficulty in valuing the marital estate, the trial court used the date of the pre-hearing conference, November 2, 1994. The parties made no agreement regarding their respective rights to the marital estate during the separation. The trial court issued the original judgment and decree on November 3, 1995. Both parties moved for amended findings and the trial court issued an amended order on January 26, 1996. The amended order took 50 percent of the gravel rights from appellant and gave them to respondent. No corresponding adjustment was made in appellant's favor. Both parties appeal.

The homestead is an 80-acre hobby farm. The trial court, using respondent's figures, valued the homestead's fair market value at $196,700. Appellant's appraiser valued the property at $257,500. His appraisal involved rezoning the property and investing a significant amount of money to develop the land into residential lots. The court accepted respondent's figure of $196,700.

In January 1995, respondent contracted with a company to remove sand and gravel

Michael O. Burns, Mike Burns Law Office, St. Cloud, for Appellant.

Kevin L. Holden, Murphy & Holden, P.A., St. Cloud, for Respondent.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

from 26 acres of the homestead. Appellant learned of this contract after the trial began in May 1995. The gravel removal contract generated $90,000 in the first year of the two year contract. Respondent testified he does not intend to extend the contract after it expires claiming further removal of gravel "will hurt the property's value." It was after the potential value of the sand and gravel rights became known that respondent moved the court for its amended order taking 50 percent of the sand and gravel rights away from appellant and giving them to respondent.

At the time of their separation, the parties had one investment account at Dain Bosworth valued at $27,086.37. While the parties were separated, respondent opened a second account at R.J. Steichen and managed it himself. The trial court originally valued the investment accounts at Dain Bosworth and R.J. Steichen at $63,899, including them both as marital property.

Other assets include respondent's business and the Columbia apartment building. The trial court found that respondent's masonry business no longer existed and that his accounts receivable were uncollectible. The trial court, therefore, gave no value to either one. The trial court awarded these two assets to respondent with no offsetting award to appellant on her side of the ledger. The parties also own the Columbia apartment building that the trial court found to have a fair market value of $240,000 and to be encumbered by a $215,000 mortgage. The trial court also found the apartment building had no true equity and gave 100 percent of this asset to respondent.

## ISSUES

1. Did the trial court err in not granting a new trial so that the homestead could be appraised with knowledge of the gravel deposit?

2. Did the trial court abuse its discretion in making the property division?

3. Did the trial court abuse its discretion when it amended the dissolution decree to take 50 percent of the sand and gravel rights away from appellant and gave them to respondent without any offsetting award to appellant?

4. Did the trial court abuse its discretion in not crediting respondent with mortgage payments, payment of real estate taxes, payment of insurance, and improvements to the homestead during the separation?

5. Should either party receive attorney fees?

## ANALYSIS

1. Appellant argues the trial court erred in not granting a new trial so that the homestead could be reappraised with knowledge of the gravel deposit. Respondent argues that appellant did not raise this issue to the trial court and hence has waived it on appeal. *Park Hill Apartments v. Anderson,* 409 N.W.2d 924, 925 (Minn.App.1987). We conclude that appellant properly raised this issue in her post-trial motion. Accordingly, the issue is not waived.

### A. Valuation

Appellant argues, and we agree, that the trial court erroneously failed to consider the newly discovered gravel deposit when valuing the homestead. Appellant did not learn of the existence of the gravel pit and the potentially lucrative value of the unmined gravel until three weeks before the end of the trial. In addition, neither appraiser had the opportunity to consider the gravel deposit when valuing the property. There is no indication of how much gravel the property contains. Given that a sand and gravel buyer was happy to pay $90,000 during the first year of operation for what is concededly not all of the sand and gravel, it is axiomatic that the homestead may be worth considerably more than its present valuation, if sand and gravel rights are factored into the appraisal.

Accordingly, we reverse the trial court on the issue of the homestead property division. We remand and direct the trial court to allow both parties the opportunity to obtain a new appraisal of the property within a reasonable period of time. If the trial court finds the value of the homestead unchanged, then its decision will stand. Should the trial court find the value of the homestead to be more

than $196,700 and the increase is due to the newly discovered gravel, then appellant shall be entitled to a lien of 50 percent of the value over and above $196,700. There is no prejudice to respondent because the first $196,700 of value remains his just as it would have been had there been no appeal. Appellant is entitled to 50 percent of the overage (if any) if the trial court accepts newly discovered evidence that increases the value of the homestead.

 Appellant also argues that the original valuation, without consideration for the sand and gravel, should be at her figure of $257,000 rather than the value of respondent's appraiser, $196,700. On this issue, we affirm the trial court. The trial court was faced with two competing appraisals using different methods of evaluation. This elected figure of $196,700 is easily within the range of acceptable figures based on the record. *Hertz v. Hertz,* 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975) (value trial court arrives at must be within a reasonable range of figures).

B. Appellant's interest in the sand and gravel rights.

 The original judgment gave appellant 100 percent of the proceeds from the gravel contract when neither party knew the true value of the contract. After respondent learned how valuable the contract was, and that it could be estimated to generate $75,000 to $150,000, or even more, he moved the trial court for amended findings to divide the right to sell the sand and gravel evenly. In light of this new information on the value of the gravel deposit, the trial court did as respondent's attorney requested and evenly divided the proceeds from the gravel contract by taking 50 percent from appellant (who originally had been awarded 100 percent of the gravel contract) and giving that 50 percent to respondent (who originally had been awarded zero percent of the gravel contract). Without making any findings or stating any reasoning, the trial court did this without granting any corresponding benefit to appellant.

On remand, the trial court is directed to reconsider the division of the sand and gravel

rights and to give both parties a chance to present evidence if they wish. With the potential value of the gravel deposit now out in the open, consideration must be given to whether respondent's new enrichment from the amended judgment should result in something moving to appellant's side of the ledger.

Further, the duration of appellant's rights in the gravel deposit must be addressed. At the time of this appeal, the gravel contract had generated $90,000 for the first year of the two-year contract. Respondent concedes that appellant's right to half of the income from the gravel is protected for the remainder of the two-year contract. Respondent's attorney also concedes that as long as his client owns the property and is selling gravel, appellant is still entitled to receive half of the proceeds. **But** respondent also concedes there is no protection for appellant should respondent choose not to sell any more gravel after this two-year contract expires or should respondent sell the property to someone who would pay an enhanced value so the new buyer could mine the gravel. In that event, respondent would receive all of the enhanced proceeds, the new buyer would get all the gravel, and appellant's residual rights to half of the mined gravel would disappear forever. This is not equitable. *See* Minn. Stat. § 518.58, subd. 1 (Supp.1995) (trial court to equitably divide marital property).

On remand, we direct the trial court to give both attorneys an opportunity to present evidence and argument on how best to fashion an equitable lien for appellant that will survive the sale of all or part of the homestead should respondent decide to do so. We make it clear that this equitable lien of appellant is only for her rights in the sand and gravel. Thus, the lien does not affect the first $196,700 of value awarded to respondent free and clear of appellant's interest. As previously stated, should the trial court reappraise the homestead upward, 50 percent of the enhanced figure must go to appellant. That is a separate issue from appellant's and respondent's rights to sell mined sand and gravel.

**2.** Both parties claim certain errors with regard to the trial court's division of the remaining property. A trial court has broad discretion in making a property division and will not be overturned absent a clearly erroneous conclusion that is against logic and the facts on the record. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). An appellate court does not require the trial court to be exact in its valuation of assets, "it is only necessary that the value arrived at lies within a reasonable range of figures." *Hertz*, 304 Minn. at 145, 229 N.W.2d at 44.

Here, the trial court valued the homestead at $196,700, adopting the cost approach estimate done by respondent's appraiser. The trial court rejected appellant's appraised value of $257,700 because it required rezoning and significant investment to develop the land for residential lots and because it represented a previously unintended use for the property. The trial court did not abuse its discretion on the homestead when it settled on respondent's appraisal. But it abused its discretion when it did not factor in the sand and gravel rights and when it first gave appellant 100 percent of the sand and gravel rights, but then took 50 percent of them away from her with no offset to her side of the ledger.

Respondent claims the trial court erroneously determined the debt encumbering the homestead. Respondent, however, failed to present this issue to the trial court in its motion for amended findings or in any other manner. Error that is first argued on appeal and was not the basis of a motion for a new trial or otherwise presented to the trial court may not be considered on appeal. *Park Hill Apartments*, 409 N.W.2d at 925. Having failed to present this to the trial court, respondent is deemed to have forfeited this issue on appeal.

Appellant argues the trial court abused its discretion when it concluded that the Columbia Apartments effectively had no value. The trial court found that the apartments had a fair market value of $240,000 but were encumbered by a $215,000 mortgage. Although the apartments had $25,000 in equity on paper, the trial court concluded the apartments had no practical value. The trial court noted that the apartments operated with a negative cash flow and that in order to sell the apartments, a qualified buyer would have to satisfy the entire mortgage. Concluding such a buyer would be rare, the trial court assigned no value to the apartments. The trial court's findings are supported by the record. We cannot say the trial court's reasoning is against logic.

Appellant argues the trial court abused its discretion in valuing the investment accounts. Originally, the trial court valued the investment accounts at $63,899. During the parties' separation, they sold the St. Judes apartment building and evenly split the $24,000 proceeds. Respondent contends he invested his share in the investment accounts. Thus, in the amended order the trial court subtracted the respondent's $12,000 share of the proceeds from the sale. Appellant correctly points out that respondent testified that he invested approximately $9,000 at the time St. Judes was sold. Accordingly, appellant assigns error in the trial court's reducing the value of the investment accounts by $12,000. The problem is that appellant failed to present this argument to the trial court, and as such, did not preserve this issue for appeal. *Park Hill Apartments*, 409 N.W.2d at 925.

Respondent claims that the trial court abused its discretion when it rejected his argument that all but $27,086.37 of the investment accounts should be deemed his non-marital property because he made, invested, and managed that money during the parties' separation. The trial court valued the marital estate, including the investment accounts, as of the prehearing conference, and noted that the parties made no agreement regarding the use of the marital property during the separation. In essence, respondent argues the investment accounts should be valued as of the date of the parties' separation. Under Minn.Stat. § 518.58, subd. 1, the trial court is required to value the parties' property as of the date of the prehearing conference unless the parties agree to another date or the court makes specific findings that another date is fair and equitable. Here, the trial court found no

equitable facts to support using another date, noting among other things that it was no longer possible to trace funds used during the separation. Further, as the trial court noted, because the parties made no agreement regarding the use of the marital property, they are now bound by the outcome of their arrangement. We affirm the trial court on these valuation issues.

■ Appellant argues the trial court abused its discretion when it found that respondent's masonry business no longer existed and that his accounts receivable were uncollectible and therefore gave no value to either one. There was no evidence presented at trial that respondent's business was ongoing, with continuing receipts or customers. While there was evidence presented that respondent has accounts receivable of approximately $9,000, the trial court found that absent evidence of on-going receipts, the accounts receivable were considered bad debts and therefore without value. We cannot say the trial court's conclusion was erroneous or against logic and the facts on the record. We affirm this division of property.

■ 3. Respondent argues that the trial court abused its discretion in not crediting him with the mortgage payments, payment of real estate taxes, payment of homeowner's insurance, and improvements made to the homestead during the separation. Minnesota law recognizes a conclusive presumption that property is marital if it is acquired while the spouses are "living together as husband and wife." Minn. Stat § 518.58, subd. 1. Respondent argues this statutory presumption is lost after the parties separate.

In support, respondent argues that this court has twice held that the statutory presumption does not apply to the period of time when the parties no longer lived together. *Batsell v. Batsell,* 410 N.W.2d 14, 17 (Minn.App.1987), *review denied* (Minn. Sept. 30, 1987); *March v. March,* 435 N.W.2d 569, 571 (Minn.App.1989). These cases are distinguishable. In *Batsell,* the parties had divorced eighteen years earlier under a default judgment following the wife's failure to respond to service by publication. The homestead was insufficiently described in the published notice so the trial court lacked jurisdiction over the homestead. Years later, the husband brought suit to clear his ex-wife's name from the title so he could sell the property. The issue on appeal was whether the trial court abused its discretion in awarding the wife a lien to secure half the net equity in the home when most of the appreciation occurred after the dissolution. 410 N.W.2d at 16. Given the equities of the case, this court found it unreasonable to allow the wife a lien for half the equity in the home. *Id.* at 17. In *March,* the parties made a division of the marital assets which they adhered to during their ten-year separation. Even though the property division gave the husband twice as much money as the wife, this court held that the trial court did not abuse its discretion in not including the increase in equity in the parties' respective homes as marital property. 435 N.W.2d at 571.

Here, unlike *Batsell,* the parties were separated, and not legally divorced. In addition, unlike *March,* the parties made no division of property when they separated. As the trial court noted in its Memorandum of Law, "[n]either party ever made even a suggestion of an attempt to treat the marital assets other than as a common pool controlled by John." The trial court further noted that if the valuation date were moved back to the date of separation, appellant would likely be granted interest on the money respondent controlled. Further, appellant had to pay her own living costs during the separation and these are the same costs that respondent essentially seeks to have reimbursed from what otherwise is the marital estate. Given the extensive findings the trial court made regarding the effect of the parties' long separation and their support in the record, denying respondent the credit he seeks was not clearly erroneous. If respondent's argument is carried to its logical end, every divorcing couple will have nonmarital property claims arising out of their separation, no matter how brief it may be. We do not adopt such an interpretation.

■ 4. Appellant argues that the trial court abused its discretion when it denied her request for attorney fees based upon

**104**

respondent's misconduct. Minnesota law allows a trial court to award attorney fees when a party "unreasonably contributes to the length or expense of the proceeding." Minn.Stat. § 518.14, subd. 1 (Supp.995). A refusal to award attorney fees will not be reversed absent a clear abuse of discretion. *Bogen v. Bogen,* 261 N.W.2d 606, 611 (Minn. 1977). The complexity of the case due to the parties' long separation and the actions of both parties contributed to the expense involved in this case. Further, appellant never documented or stated what amount of additional fees she incurred. Accordingly, the trial court's refusal to grant attorney fees was not an abuse of discretion. Both parties also request attorney fees on appeal. Attorney fees may be awarded in dissolution cases for frivolous or bad faith appeals. Minn.Stat. § 518.14 subd. 1; *Dabrowski v. Dabrowski,* 477 N.W.2d 761, 766 (Minn.App.1991). We find both parties presented colorable legal arguments on difficult issues. We decline to award either party attorney fees on appeal.

### DECISION

We partially reverse and remand on the issue of the valuation of the homestead. Both sides are entitled to present new evidence on the value of the sand and gravel reserves. Otherwise, the trial court's valuation of $196,700 stands. If the final trial court finding on the value of the homestead is an amount in excess of $196,700, appellant is awarded at least 50 percent of the overage.

After taking evidence, the trial court shall fashion an equitable lien for appellant on the sand and gravel deposits that will survive a decision by respondent to stop mining sand and gravel and/or to sell the property to a third party, unless appellant voluntarily sells her rights to the sand and gravel deposit.

All other issues of property division are affirmed. The trial court did not abuse its discretion in denying attorney fees. We do not grant either party attorney fees on appeal.

**Affirmed in part, reversed in part, and remanded.**