*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0570**

Kidane Sante Shulbe, petitioner,
Appellant,

vs.

Ashley Rose Henke,

Respondent.

**Filed December 1, 2025**
**Affirmed**
**Ede, Judge**

St. Louis County District Court
File No. 69DU-FA-12-611

Kidane Shulbe, Hastings, Minnesota (pro se appellant)

Ashley Henke, Saginaw, Minnesota (pro se respondent)

Considered and decided by Ede, Presiding Judge; Smith, Tracy M., Judge; and Cochran, Judge.

**NONPRECEDENTIAL OPINION**

**EDE**, Judge

In this family law appeal concerning a parenting dispute, appellant father challenges the district court's order denying his motion to modify parenting time without an evidentiary hearing and its order denying his motion to hold respondent mother in contempt of the court's parenting-time order. Father argues: (1) that the district court abused its

discretion in determining that his motion to modify parenting time was a de facto motion to modify physical custody; (2) that the court erroneously denied his motion to modify parenting time; (3) that the court abused its discretion by denying his request to change the children's surnames; and (4) that this court should order that his legal matters be separately adjudicated, that his district court and appellate filing fees be refunded, and that his case be removed from district court. We affirm.

## FACTS

Appellant Kidane Sante Shulbe (father) and respondent Ashley Rose Henke (mother) have two children: I.S., born in 2009; and M.S., born in 2011. In September 2012, the district court awarded the parties joint legal and joint physical custody. The district court also ordered that the children's primary residence be with mother.

In May 2024, father filed a "motion for change of custody and parenting time assistance." Although he requested that the district court maintain "joint legal custody to the parties," father also asked the court to award him what he called "primary legal custodial assignment." Moreover, father moved the district court to modify mother's parenting-time schedule, to remove mother's primary residence designation, to order that the children reside with him and attend school near his home, and to change the children's surname to "Water." Mother filed a responsive motion requesting that the district court deny father's motion, modify parenting time, and grant her conduct-based attorney fees. A court-appointed guardian ad litem (GAL) submitted a report to the district court

2

recommending that permanent legal custody and physical custody of the children "be split."[1]

Additional motions by the parties ensued. Mother moved the district court to hold father in contempt for allegedly violating the court's order that he maintain medical insurance for the children. Father filed a "motion for slander and false claim of harassment," as well as a motion to hold mother in contempt of the district court's parenting-time order. The district court held a hearing on these motions and, in February 2025, filed three orders addressing the parties' requests.[2]

---

[1] "Split" custody refers to a custody arrangement in which each parent has sole physical or sole legal custody (or both sole physical and sole legal custody) of some but not all of their joint children. *See, e.g.*, *Long v. Creighton*, 670 N.W.2d 621, 628 (Minn. App. 2003) (stating that "[s]plit physical custody exists when each parent has sole physical custody of some, but not all, of the parents' children" (citing *Sefkow v. Sefkow,* 427 N.W.2d 203, 215 (Minn. 1988))). "Split" custody is disfavored. *See Maxfield v. Maxfield*, 452 N.W.2d 219, 223 (Minn. 1990). But it is "not conclusively erroneous." *Sefkow*, 427 N.W.2d at 215. Here, however, we understand the GAL's recommendation that permanent legal custody and physical custody of the children "be split" to refer to what would otherwise be called "joint" custody—a custodial arrangement in which each parent has equal rights and responsibilities over the physical or legal custody (or both the physical and legal custody) of their children. *See* Minn. Stat. § 518.003, subd. 3(b), (d) (2024) (defining joint legal and joint physical custody). We cite the most recent version of subdivisions 3(b) and (d) of section 518.003 because the statute has not been amended in relevant part. *See Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) (stating that, generally, "appellate courts apply the law as it exists at the time they rule on a case"). For the same reason, we also cite the current versions of other statutes cited in this opinion.

[2] In the third of the February 2025 orders, the district court denied mother's motion to hold father in contempt. That order is not at issue in this appeal.

In the first of the February 2025 orders, the district court denied father's requested name change after considering the five *Saxton* factors.[3] In addition, the district court denied father's motion asserting "slander and false claim of harassment" and his motion to hold mother in contempt of the court's parenting-time order. The district court reasoned that it did not have jurisdiction to charge mother criminally—as father had requested—and that the family court proceedings were not the appropriate forum for father's slander and harassment claim. And the district court ruled that mother's conduct did not meet the requisite standard for a finding of contempt and that no award of costs and fees to father was warranted.

In the second of the February 2025 orders, the district court addressed father's motion to modify parenting time and mother's responsive motion requesting that the court deny father's motion, modify parenting time, and grant her conduct-based attorney fees. As a threshold matter, the district court determined that joint legal custody with "primary legal custodial assignment" was not recognized in Minnesota law, that father's request for a designation of "primary legal custodial assignment" would have required modification to sole legal custody, and that, at the hearing, father conveyed that he did not want modification to sole legal custody and orally withdrew any formal request to that effect. Turning to the *Christensen* factors,[4] the district court ruled that father's motion to modify

---

[3] *See In re Saxton*, 309 N.W.2d 298, 301 (Minn. 1981) (identifying five non-exclusive factors for determining whether a proposed name change is in a child's best interests).

[4] *See Christensen v. Healey*, 913 N.W.2d 437, 443 (Minn. 2018) (discussing non-exhaustive factors for determining whether a motion to modify parenting time is a de facto motion to modify physical custody). Although we cite this case as "*Christensen v. Healey*"

4

parenting time was a de facto request to modify physical custody that required father to make a prima facie case for physical-custody modification. Because father did not identify which of the five statutory custody-modification grounds applied to his request to modify parenting time,[5] the district court reviewed father's motion and the factual allegations therein. The district court decided that father's motion seemed to seek modification of physical custody on the ground that the children were endangered in their current custodial arrangement and that application of the statutory endangerment standard was therefore appropriate.[6] And the district court ruled that father had "not [met] his burden to establish a prima facie case for modification." Thus, the district court decided that father was "not entitled to an evidentiary hearing on the matter" and denied his motion to modify parenting time.[7]

Father appeals.

## DECISION

Father challenges the district court's order denying his motion to modify parenting time without an evidentiary hearing and its order denying his motion to hold mother in

consistent with its citation in the most recent published opinions of this court, the Minnesota Supreme Court has referred to this decision as "*In re Custody of M.J.H.*" *See, e.g., Woolsey v. Woolsey*, 975 N.W.2d 502, 507 (Minn. 2022).

[5] *See* Minn. Stat. § 518.18(d)(i)–(v) (2024).

[6] *See* Minn. Stat. § 518.18(d)(iv).

[7] The district court also denied mother's responsive motion to modify parenting time and her request for conduct-based attorney fees. These aspects of the district court's second February 2025 order are not at issue in this appeal.

contempt of the court's parenting-time order. He maintains: (1) that the district court abused its discretion by "wrongfully characteriz[ing]" his motion to modify parenting time as a de facto motion for a change of custody; (2) that the court erroneously denied his motion to modify parenting time; (3) that the court abused its discretion by denying father's request to change the children's surnames; and (4) that this court should order that father's legal matters be separately adjudicated, refund all his filing fees, and have his case "removed" from the district court.

Father is self-represented in this appeal. He has not cited caselaw, has provided only passing references to relevant statutes and the record, and has not adequately briefed his arguments. "Although some accommodations may be made for pro se litigants, this court has repeatedly emphasized that pro se litigants are generally held to the same standards as attorneys and must comply with court rules." *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001). Appellate courts generally "decline to reach [an] issue in the absence of adequate briefing." *State Dep't of Lab. & Indus. by the Special Comp. Fund v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997). And "[a]n assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is [forfeited] and will not be considered on appeal unless prejudicial error is obvious on mere inspection." *Schoepke v. Alexander Smith & Sons Carpet Co.*, 187 N.W.2d 133, 135 (Minn. 1971); *see also State v. Beaulieu*, 859 N.W.2d 275, 278 n.3 (Minn. 2015) (observing that "the United States Supreme Court has drawn a distinction between forfeiture and waiver" by "explaining that[,] whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a

known right," and stating that the Minnesota Supreme Court "use[s] the word 'forfeiture' when describing a failure to make a timely assertion of a right" (quotation omitted)).

Mother did not file a responsive brief. When a "respondent fails or neglects to serve and file its brief, the case shall be determined on the merits." Minn. R. Civ. App. P. 142.03.

As explained below, our inspection of this record does not reveal any obvious prejudicial error.

**I.      The district court acted within its discretion in determining that father's motion to modify parenting time was a de facto motion to modify physical custody.**

Father contends that the district court "wrongfully characterized" his motion to modify parenting time as a de facto motion to modify physical custody. He maintains that the district court abused its discretion, asserting that his motion would not have resulted in a de facto physical custody change. We conclude that the district court acted within its discretion in determining that father's motion to modify parenting time was a de facto motion to modify physical custody.

"The requisite legal standard for modification of an existing parenting-time order differs materially from the standard required for modification of physical custody." *Bayer v. Bayer*, 979 N.W.2d 507, 510 (Minn. App. 2022). A district court "shall" grant a motion to modify parenting time "if the 'modification would serve the best interests of the child' and 'would not change the child's primary residence.'" *Id.* (quoting Minn. Stat. § 518.175, subd. 5(b) (2020)). By contrast, to grant a motion to modify physical custody, a "district court must find (1) 'that a change has occurred in the circumstances of the child or the parties,' (2) 'that the modification is necessary to serve the best interests of the child,'

7

and (3) that one of five bases listed in the statute has been established." *Id.* (footnote omitted) (quoting Minn. Stat. § 518.18(d) (2020)). And a determination that a motion to modify parenting time amounts to a de facto motion to modify physical custody can affect whether the endangerment standard set forth in Minnesota Statutes section 518.18(d)(iv) applies. *Christensen*, 913 N.W.2d at 443.

"[W]hether a proposed change modifies parenting time or amounts to a de facto change in physical custody is to be determined by assessing the impact of the change, not its label." *Bayer*, 979 N.W.2d at 510. To decide whether a motion to modify parenting time is a de facto motion to modify physical custody,

> a court should consider the totality of the circumstances to determine whether the proposed modification is a substantial change that would modify the parties' custody arrangement. The factors considered may include the apportionment of parenting time, the child's age, the child's school schedule, and the distance between the parties' homes, but these factors are not exhaustive.

*Id.*

We review a district court's determination of whether a proposed parenting-time modification constitutes a de facto change in custody under an abuse-of-discretion standard. *Id.* at 512. "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey*, 975 N.W.2d at 506 (quotation omitted).

The district court weighed the *Christensen* factors and determined that three out of the four of them favored treating father's motion to modify parenting time as a de facto motion to modify physical custody. In particular, the district court found that the long

8

distance between the parents' homes (i.e., 165 miles and around two-and-a-half hours' driving time from father's home in Hastings to mother's home near Cloquet), the proposed change in the children's school to somewhere in "the Twin Cities metro area," and the requested modification of the children's primary residence from mother to father all supported its determination that father's motion was a de facto change in custody. As to the apportionment of parenting time, the district court ruled that father's proposed change would be significant because it "would essentially reverse the current schedule." Lastly, the district court decided that the ages of the children were "neutral towards a conclusion of whether the motion [was] a de facto change in custody."

On appeal, father has not shown that this determination by the district court is based on findings of fact unsupported by the evidence, the result of a misapplication of the law, or against logic and the facts on record. *See id.* We discern no obvious prejudicial error in the district court court's straightforward application of *Christensen* to the facts in the record. 913 N.W.2d at 443.

Accordingly, we conclude that the district court acted within its discretion in determining that father's motion to modify parenting time was a de facto motion to modify physical custody.

## II. The district court's summary denial of father's de facto motion to modify physical custody was not erroneous.

Father contends that the district court did not consider the following allegations in denying his de facto motion to modify physical custody: that mother stole his identity; that she committed tax fraud; that she used his name in an "unauthorized" manner; and that she

traumatized M.H. by taking a picture of M.H.'s x-ray during an incident in which M.H. broke his ankle and sought emergency medical care. He also asserts that the district court erred by disregarding the children's "reasonable preference" as part of its analysis of the 12 statutory best-interest factors set forth in Minnesota Statutes section 518.17, subdivision 1(a) (2024). We construe father's arguments as maintaining that the district court abused its discretion in denying his de facto motion to modify physical custody,[8] and we conclude that his contentions are unavailing.

When we review an order denying a custody-modification motion without an evidentiary hearing, we apply a three-step process:

> First, we review de novo whether the district court properly treated the allegations in the moving party's affidavits as true, disregarded the contrary allegations in the nonmoving party's affidavits, and considered only the explanatory allegations in the nonmoving party's affidavits. Second, we review for an abuse of discretion the district court's determination as to the existence of a prima facie case for the modification or restriction. Finally, we review de novo whether the district court properly determined the need for an evidentiary hearing.

---

[8] In his appellate brief, father discusses these allegations in connection with his request that the district court award him "primary joint legal custody" while allowing mother to "still obtain joint legal custody." The district court correctly determined that such an arrangement is not recognized in Minnesota law. *See* Minn. Stat. § 518.003, subd. 3(b), (d) (defining joint legal and joint physical custody without reference to "primary joint legal custody"). And the district court properly ruled that father's request would have required a modification to award father sole legal custody—an outcome that father did not seek in the district court and is not pursuing on appeal—and that father orally withdrew any formal request for such a modification. Given this context, we understand father's appellate arguments as challenging the district court's decision to deny his de facto motion to modify physical custody.

*Boland v. Murtha*, 800 N.W.2d 179, 185 (Minn. App. 2011). With these legal standards in mind, we next address each of the three analytical steps set forth in *Boland*.[9]

## A.    The district court did not err by failing to consider father's allegations as true.

Father contends that the district court did not consider as true his allegations of identity theft and tax fraud by mother. This contention relates to mother's purported use of father's name as the "presenting parent" when she sought treatment for M.H.'s broken ankle. It also concerns the notice that father asserted he received from the Minnesota Department of Revenue that another individual aside from the parents had claimed the children as dependents for the 2017 tax year. As to the latter assertion, father alleges that mother had allowed her ex-boyfriend to claim the children on his 2017 tax return.

The district court began its order denying father's motion to modify parenting time by stating that its decision was "[b]ased on the submissions of the parties, statements made at the hearing, the file, and all records herein." And the district court acknowledged that it had "to accept the facts as alleged by the moving party as true, consider the non-moving

---

[9] Father's arguments on appeal do not appear to challenge the last two steps of the three-step process for reviewing a district court's summary denial of a motion to modify custody. We therefore deem these issues forfeited because father has not challenged the district court's determinations about those steps on appeal. *See In re Welfare of Child of T.M.A.*, 11 N.W.3d 346, 365 n.7 (Minn. App. 2024) ("When an appellant fails to provide legal argument or to cite legal authority in support of [a] proposition[,] . . . [t]he issue is not adequately briefed, and we therefore deem it [forfeited]." (quotation omitted)); *see also Beaulieu*, 859 N.W.2d at 278 n.3. In the interest of completeness given father's overall challenge to the denial of his motion to modify parenting time, however, we review the district court's analysis of those steps in subsections B. and C, below.

11

party's supporting documents only as context or further explanation, and to disregard contrary allegations from the non-moving parent."

Although the district court may not have directly referenced father's allegations of identity theft and tax fraud by mother, there is no indication in the order denying father's motion to modify parenting time that the court failed to consider the allegations as true. As discussed below, father has failed to meaningfully connect these allegations with the five statutory grounds for custody modification set forth in Minnesota Statutes section 518.18(d). His conclusory and vague assertions about tax fraud and identity theft are insufficient. *See Szarzynski v. Szarzynski*, 732 N.W.2d 285, 292 (Minn. App. 2007) (noting that a movant does not allege a prima facie case if the allegations are merely conclusory, are "too vague to support a finding of endangerment," or are "devoid of allegations supported by any specific, credible evidence" (quotations omitted)).

In short, the record reflects that the district court neither failed to treat father's allegations as true nor erroneously relied on contrary allegations in denying father's de facto motion to modify physical custody.

**B.    The district court acted within its direction in determining that father did not make a prima facie case for custody modification.**

Before the district court, father did not identify any of the five statutory grounds set forth in Minnesota Statutes section 518.18(d) as applicable to his de facto motion to modify physical custody. The district court determined that, because none of the grounds set forth in paragraphs (d)(i) through (iii) and in paragraph (d)(v) applied, the only possible ground that could apply was the endangerment standard provided in 518.18 (d)(iv). Even if father

12

had not forfeited this issue, we would conclude that the district court did not abuse its discretion.

In considering the endangerment standard, the district court addressed father's assertions that mother allowed the children to be habitually truant from school and that the children wished to reside with him. While the district court noted that there were allegations of truancy in the record, the court also observed that no formal truancy case was ever opened.

Given the reasoned basis on which the district court determined that father did not make a prima facie case for custody modification, we discern no abuse of discretion in this decision by the district court.

### C. The district court correctly determined that an evidentiary hearing was unwarranted.

Assuming without deciding that father has not forfeited any argument about the district court's decision to deny him an evidentiary hearing on his de facto motion to modify physical custody, we conclude that such a contention would lack merit.

"Whether a party makes a prima facie case to modify custody is dispositive of whether an evidentiary hearing will occur on the motion." *Szarzynski*, 732 N.W.2d at 292; *see also Morey v. Peppin,* 375 N.W.2d 19, 25 (Minn. 1985) (stating that "an evidentiary hearing shall be scheduled" if a moving party makes a prima facie case to modify custody); *Nice-Petersen v. Nice-Petersen*, 310 N.W.2d 471, 472 (Minn. 1981) (explaining that, if a moving party fails to make a prima facie case, district court "[is] require[d] . . . to deny [the] motion"). Because we have determined that the district court acted within its

discretion in determining that father did not make a prima facie case for custody modification, we likewise conclude that the court correctly denied father an evidentiary hearing on his de facto motion to modify physical custody.

**III.    The district court did not abuse its discretion by denying father's request to change the children's surnames.**

Father seems to assert that the district court abused its discretion in denying his motion to change the children's surnames. He argues that "[h]yphenated last names somehow have negative impressions in . . . society" and that, because mother's other children have taken their fathers' surnames, his children should as well. This argument does not persuade us to reverse.

We review a district court's decision on a request to change a child's name for an abuse of discretion. *Foster v. Foster*, 802 N.W.2d 755, 756 (Minn. App. 2011). "A district court abuses its discretion when evidence in the record does not support the factual findings, the court misapplied the law, or the court settles a dispute in a way that is against logic and the facts on record." *Id.* (quotation and citation omitted). Specifically as to appellate review of a district court's factual findings, the Minnesota Supreme Court has "repeatedly stated that clear-error review does not permit an appellate court to weigh the evidence as if trying the matter de novo." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted). "Neither does it permit an appellate court to engage in fact-finding anew, even if the court would find the facts to be different if it determined them in the first instance." *Id.* at 221–22 (quotation omitted). "Nor should an appellate court reconcile conflicting evidence." *Id.* at 222 (quotation and citation omitted).

14

"Consequently, an appellate court need not go into an extended discussion of the evidence to prove or demonstrate the correctness of the findings of the [district] court." *Id.* (quotation omitted). Instead, "an appellate court's duty is fully performed after it has fairly considered all the evidence and has determined that the evidence reasonably supports the decision." *Id.* (quotation and citation omitted).

In deciding whether to grant a name-change application, district courts must determine whether changing the child's name is in the child's best interests. *Foster*, 802 N.W.2d at 757. The five nonexclusive *Saxton* factors for determining whether a name change is in a child's best interests are: (1) "the child's preference;" (2) "the effect of the change of the child's surname on the preservation and the development of the child's relationship with each parent;" (3) "the length of time the child has borne a given name;" (4) "the degree of community respect associated with the present and the proposed surname;" and (5) "the difficulties, harassment or embarrassment, that the child may experience from bearing the present or the proposed surname." 309 N.W.2d at 301 (citations omitted). "In weighing these factors to reach a decision, the [district] court should set out its reasons for granting or denying the application to change the minor's surname." *Id.*

The district court analyzed and discussed each of the *Saxton* factors in denying father's requested name change for the children. As to the first factor regarding the children's preference, the district court determined that it was neutral because there was no evidence in the record on that topic. The district court decided that the second factor—the effect of the change of the children's surname on the preservation and the development of

the children's relationship with each parent—weighed against father's request because he had failed to "address how the change in name would affect the children's relationship with the parents." As to the third factor—the length of time the children had borne their surnames—the district court reasoned that it weighed against father's request because they "have both had their name for more than a decade . . . and would have to adjust to a new surname that has no family connection to them or other relationship." The district court ruled that the fourth factor—the degree of community respect associated with the present and the proposed surname—weighed against changing the children's surnames because, despite father's claim that "his name and negative information about him comes up when people search for his name," any negative associations did not "rise to the level of evidence that the children [had] a lesser degree of community respect due to their current surname."[10] Lastly, as to the fifth factor—the difficulties, harassment, or embarrassment that the children might experience from bearing the present or the proposed surname—the district court determined that it was neutral because "no evidence ha[d] been submitted to the [district c]ourt by either party" on this issue. The district court balanced these factors, decided that they weighed against changing the children's surnames, and ruled that "the evidence is not clear and compelling that the substantial welfare of the children necessitates such change or that the change is in the best interest of the children."

Based on our fair consideration of the entire record—including the lack of evidence in favor of father's requested name change—we conclude that the evidence reasonably

---

[10] The district court also noted that "no evidence ha[d] been submitted to the court by either party" regarding this factor.

16

supports the district court's decision. *See Kenney*, 963 N.W.2d at 222. The district court did not abuse its discretion in its well-reasoned order denying father's request to change the children's surnames. *See Foster*, 802 N.W.2d at 756–57.

**IV.     Father is not entitled to an order that his cases be separately adjudicated, to a refund of all fees, or to have his case "removed" from the district court.**

Father requests on appeal that we order that his cases be separately adjudicated, that the district court refund the filing fees that he paid to that court, that we refund his appellate filing fees, and that we remove this matter from the Sixth Judicial District Court. As with his other assertions, our review of father's arguments is limited because his claims are neither adequately briefed nor supported by authority. *See Wintz Parcel Drivers, Inc.*, 558 N.W.2d at 480; *Schoepke*, 187 N.W.2d at 135. And our review of the record does not compel the conclusion that the district court prejudicially erred.

**A.     Separately Adjudicating Cases**

Father asserts that "the Minnesota [Sixth Judicial] District Court magistrate does not have authorit[y] over the district court judge and cannot consolidate the child support subject matter issue to be addressed under the child custody and parenting time subject matter."

"A reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotations omitted). Here, the record

17

reflects neither that father presented this argument to the district court nor that the court considered it in the first instance. Thus, we decline to consider the question.[11]

We nonetheless observe that we have no authority to reverse such decisions by the district court in managing its own docket. *See Weitzel v. State*, 883 N.W.2d 553, 560 (Minn. 2016) ("[A] state district court has the authority to control the disposition of cases on its own dockets with economy of time and effort for itself, for counsel, and for litigants."). Indeed, Minnesota Statutes section 518.17, subdivision 3 (2024) authorizes district courts to address legal custody, parenting time, and child support in custody proceedings.

We therefore conclude that this issue is not properly before us and otherwise appears meritless.

## B.    Refund of Filing Fees

Father seems to argue that the district court abused its discretion in denying his request for an award of expenses that he incurred in bringing his contempt motion. He also requests a refund of all fees that he paid to the district court—including GAL fees—as well as his appellate filing fees.

Father's argument appears to challenge the district court's determination that he is not entitled to an award of fees based on mother's conduct. Conduct-based fee awards "are discretionary with the district court." *Szarzynski*, 732 N.W.2d 295; *see also* Minn. Stat. § 518.14, subd. 1 (2024) (stating that conduct-based fees "may" be awarded against a party

---

[11] We reach the same conclusion about father's assertions as to mother's request for mediation in the district court and the conduct of that mediation, neither of which father raised as an issue before the district court, and neither of which he asserts as an error on appeal. *See id.*; *see also T. M. A.*, 11 N.W.3d at 365 n.7.

who unreasonably contributes to the length or expense of the proceeding). Thus, we review a district court's denial of a party's request for conduct-based fees for an abuse of discretion. *In re Adoption of T.A.M.*, 791 N.W.2d 573, 578 (Minn. App. 2010) (in the context of reviewing a conduct-based award of attorney fees, stating that, "[a]mong other ways, a district court abuses its discretion if it acts against logic and the facts on record, or if it enters fact findings that are unsupported by the record, or if it misapplies the law" (quotations and citations omitted)).

The district court declined to grant father a conduct-based fee award because it did "not find that [mother] acted in such a manner as to unreasonabl[y] contribute to the length [or] expense of proceedings, engaged in delaying tactics, or . . . [took] non-cooperative or obstinate positions." And the district court ruled that mother "did present a colorable legal argument on this issue."

These determinations are reasonably supported by the record. We conclude that the district court acted within its discretion in denying father's request for conduct-based fees because nothing in the record reflects that mother unreasonably contributed to the length or expense of the proceedings, and we agree with the district court's determination that mother presented colorable arguments in responding to father's contempt motion. *See* Minn. Stat. § 518.14, subd. 1; *see also Kitchar v. Kitchar*, 553 N.W.2d 97, 104 (Minn. App. 1996) (declining to award either party attorney fees on appeal when "both parties presented colorable legal arguments on difficult issues"), *rev. denied* (Minn. Oct. 29, 1996).

As to his request for a refund of appellate filing fees, if father were the prevailing party in this appeal—which he is not—he could generally seek taxation of costs and

19

disbursements, but only after the filing of our decision. *See* Minn. R. Civ. App. P. 139.03, subd. 1 ("A prevailing party seeking taxation of costs and disbursements shall file and serve a notice of taxation of costs and disbursements within 14 days of the filing of the court's order or decision."). A refund of filing fees is different from a taxation of costs and disbursements. That said, because father has not submitted his request for appellate filing fees per subdivision 1 of rule 139.03 via notice of taxation of costs and disbursements after the filing of our decision in this case, to the extent that father's argument does request costs and disbursements, it is not properly before us, and we decline to consider it at this time. *Cf. State Bank of Cokato v. Ziehwein*, 510 N.W.2d 268, 270 (Minn. App. 1994) (concluding that the respondent bank's request that "this court . . . remand for an award of attorney fees and costs for [the] appeal" was "not . . . appropriate" and instead stating that "[t]he bank may recover the reasonable attorney fees and costs of appeal upon the filing of a petition and supporting documentation with this court within [ten] days of the filing of [that] opinion"), *rev. denied* (Minn. Mar. 15, 1994).

### C.     Removal

Finally, father asks that we "[r]emov[e] the entire case from . . . [the Sixth Judicial] District Court." In support of this request, father claims that the district court was biased against him because the court waived certain fees for mother but did not do so for him. We construe father's request as an argument to disqualify the district court judge or for a change in venue.

We need not consider these claims because the record does not show that father presented them to the district court and that the district court addressed them in the first

20

instance. *See Thiele*, 425 N.W.2d at 582. In particular, while the record reflects that father sought removal of several other judicial officers and that one recused herself, it does not appear that he specifically requested the removal of the district court judge who issued the orders that he challenges in this appeal. Nor did father ask for a change in venue or otherwise seek to remove his case to a different district court.

We conclude that father's failure to preserve these issues in the district court precludes our consideration of them. But even if we were to reach father's removal request—which is not supported by citations to authority—we would conclude there appears to be no obvious prejudicial error in this record. *See Schoepke*, 187 N.W.2d at 135.

**Affirmed.**